(68 App. Div. 70.)

### SPIES v. NATIONAL CITY BANK.

(Supreme Court, Appellate Division, First Department. January 17, 1902.)

1. PROMISSORY NOTE—JUDGMENT AGAINST MAKER—SALE—INDORSER—RELEASE.

Where the holder of a note obtains a judgment thereon against the maker, and sells such judgment, without reserving in the transfer any rights or claims against the indorser, he cannot afterwards enforce payment from such indorser.

2. SAME—WRITING—PAROL EVIDENCE TO VARY—ADMISSIBILITY.

   Where the holder of a note obtained a judgment thereon against the maker in Louisiana, and sold such judgment, causing an order of subrogation of the purchaser to be entered without any reservation of any rights against the indorser, evidence of a parol agreement, reserving such rights, is inadmissible, under Code La. art. 2276, which prohibits parol evidence to vary acts in writing.

Appeal from judgment on report of referee.

Action by Amelia L. Spies, as executrix of the will of Francis Spies, deceased, against the National City Bank. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

John A. Garver, for appellant.

David C. Bennett, Jr., for respondent.


INGRAHAM, J.    There is no substantial dispute as to the facts in this case. It seems that on August 14, 1893, the defendant, a national bank doing business in the city of New York, discounted for the plaintiff, doing business in the city of New York under the name of Marcial & Co., a promissory note for $4,786.62, made by one Ong and indorsed by the plaintiff. Prior thereto the defendant had discounted for the plaintiff a note for $8,000, payable on demand, and held as collateral security therefor 100 shares of the capital stock of the Central Car Company of Connecticut. This note contained a provision that such collateral security should be applicable upon the same conditions to any other note or claim, whether matured or not, held by the bank against the plaintiff. This Central Car stock thus held as collateral was surrendered to the plaintiff, who substituted therefor 13 bonds of a Wisconsin railroad company. The note for $8,000, to secure which these bonds were held by the defendant, was not paid, and the defendant, about January, 1899, sold the railroad bonds. The proceeds therefor were applied to the payment of the $8,000 note, and the balance, amounting to $1,469.06, was applied by defendant on account of the amount due on the Ong note; and the question to be determined is whether the defendant had the right to make such an application.

When the Ong note became due it was not paid by the maker. Subsequently the defendant commenced an action against the maker of the Ong note in the state of Louisiana, where he resided, and in February, 1894, obtained a judgment against him for the amount due on the note. Thereafter the defendant sold and transferred this judgment to one Hiller for 50 per cent. of the amount due thereon, and subsequently there was entered in the court in Louisiana in which the judgment had been recovered what was called an "order of subrogation," by which it was ordered that "A. Hiller be subrogated to all the plaintiff's rights, claims, and demands in and to the judgment therein against the defendant R. M. Ong," of which Ong had notice. Under the law of Louisiana, it would appear that such a subrogation would, in effect, be an assignment or transfer to Hiller of all the plaintiff's right and claim in the judgment; would

make Hiller the owner of the judgment on the record, with the right to enforce it against the judgment debtor; and would devest the National City Bank of any title to the judgment or right to enforce it. It was also proved that by the law of Louisiana, under sections of the Civil Code, an order called a "judicial confession" becomes a judicial proceeding amounting to full proof against him who has made it, and cannot be revoked unless it be proved to have been made through an error in fact; and that parol evidence would not be admitted "against or beyond what is contained in the acts, nor on what may have been said before or at the time of making them, or since"; and the construction given to this provision in the Code by the courts of Louisiana would seem to be that such a judicial act would be conclusive as against the party making it, and would vest absolutely in the transferee of the judgment all rights against the judgment debtor which the party making the transfer had, and could neither be explained nor modified by evidence of a parol agreement made at or before the making of the judicial act that could in any way affect the right of the transferee of this judgment, or in any way reserve to the transferee any right to enforce this judgment, or any interest in the proceeds that would result from such an enforcement.

There can be no doubt, I think, but that the right of the defendant to recover from the maker of this note the amount due thereon was merged in this judgment. This judgment being in force, he could not maintain an action against the maker of the note, based upon his obligation to pay it. His sole right, as against the maker, was to enforce the judgment. The defendant was the owner of this judgment, into which had been merged the obligation of the maker of the note. The obligation, as against the plaintiff as indorser of the note, however, still continued; but, upon his payment of the amount due on the note, he was entitled to be subrogated to the right of the holder of this note to enforce the judgment against the maker; and, this being the situation, had the defendant voluntarily transferred the judgment that it had obtained against the maker for the amount of the note to a third party, putting it out of its power to transfer to the indorser the obligation of the maker upon the indorser's paying the amount due on the note, the indorser would have been discharged.

In Shutts v. Fingar, 100 N. Y. 539, 3 N. E. 588, 53 Am. Rep. 231, the court, speaking of the obligation of the holder of a note to an indorser, says:

"Upon payment of such obligation, an indorser is entitled to demand its possession from the creditor, with the right of subrogation to all securities and remedies possessed by him against the prior parties thereon, unimpaired by any act of laches of such creditor."

And after discussing the authorities the court continues:

"From the foregoing considerations, it would seem to follow that, in order to sustain the contention of the respondent, we would be required to hold that an indorser remains liable upon a note after his principals have been discharged from their obligation upon it, and that his right of subrogation entitled him only to the possession of a security rendered worthless by the

neglect of the creditor. Where such consequences are produced by the direct action of the creditor, all of the authorities concur in holding that it constitutes a good defense to the indorser, and it is difficult to see why the same consequences, produced by the deliberate laches and inaction of the creditor, should not lead to the same result."

The defendant, however, seeks to avoid the application of this principle by proving an oral understanding between himself and the transferee of the judgment, with the knowledge and assent of the judgment debtor, that the assignment of the judgment "was made under the condition that the bank specially reserved all of its rights, claims, and demands against the payees and indorsers of the note." The circumstances under which this judgment was assigned or transferred were as follows: The maker of the note, having become insolvent, made an arrangement with his creditors in New Orleans to settle with them at 25 cents on the dollar of their indebtedness. The defendant refused to accept such conditions, and negotiations were then entered into between a representative of the defendant in New Orleans and one Alfred Hiller, who had agreed to advance to the maker of the note the money necessary to secure this judgment; and it was finally agreed that the defendant should transfer this judgment to Hiller for 50 cents on the dollar, upon the express condition that all rights of the defendant against the payee and indorsers of the note, other than the maker, should be reserved, and the arrangement was carried out by this order of subrogation. The transfer was affected, Hiller paying the costs and attorney's fees and one-half of the judgment, aggregating $2,629.28, it being understood that Hiller was acting in behalf of Ong, the judgment debtor, and subsequently Ong paid to Hiller the amount that he paid the defendant. In the formal transfer of the judgment to Hiller there was no reservation of the right to enforce the obligation of the indorser, the oral understanding of the reservation of the rights against the indorser being made prior to the time that the subrogation order was entered.

The defendant insists that, by this reservation of the rights of the holder of the note against the other parties liable on it, the plaintiff's liability as indorser continued, and the defendant was entitled to apply the amount realized upon the sale of the securities before mentioned to the payment of that liability. The principle upon which the defendant relies was first applied in this state in Stewart v. Eden, 2 Caines, 121, 2 Am. Dec. 222, in which it was held that where the holder of a note releases the maker, reserving, however, the liability of the indorsers, such a release did not discharge the indorsers; and that principle has been adopted in cases where one of two joint debtors or one of two sureties is released by the creditor, when the instrument affecting the release contains such a reservation. I know of no case, however, where the release itself was absolute upon its face, without any reservation against the other parties liable, that the creditor has been allowed to prove an oral understanding, made cotemporaneously with or prior to the execution of the release, reserving his right to enforce the obligation as against the other parties liable thereon, as is sufficient to destroy

the effect of the release of the principal, so far as it discharges the sureties.

In Morgan v. Smith, 70 N. Y. 538, it was held that the defendant was not discharged by virtue of an agreement between the principal and creditor. This agreement, however, contained a provision that it was not to impair in any way the obligations between the parties in the premises, or impair or. alter the security thereunder, nor in any wise to affect the relation of landlord and tenant existing between the parties, and the security for the rents and covenants thereunder. This was based upon the ground that the sureties had left to them all the rights they ever had to pay up the rent as it fell due, and to go against their principals for repayment, which right was preserved to the sureties by the condition put into the agreement. The court said:

"The ground upon which a surety is held discharged, when further time for repayment is given to the principal debtor, is that the rights of the surety are varied, as he cannot then, when the debt is due and payable, make payment, and thus put himself in the place of the creditor, according to the original implied contract, and enforce repayment from the principal. Where the remedies of the creditor are reserved against the sureties, notwithstanding the new agreement with the principal, the situation of the sureties is not varied, and the rule does not apply."

Palmer v. Purdy, 83 N. Y. 144, relied upon by the defendant to show that an agreement may be made by parol, is certainly not an authority for that proposition. In that case the surety sought to be discharged in consequence of the acceptance by the creditor of a promissory note from the principal, which it was claimed extended the time of payment so as to discharge the sureties; but it was held that the note was accepted upon the express stipulation that the liability of the other parties should not be released, and with the reservation of the rights and remedies of the plaintiff against the defendants. This agreement to extend was inferred from the delivery and acceptance of the note of the principal debtor by the creditor, but as a part of that transaction the effect of the receipt of the note was qualified by an express agreement or condition upon which the note was delivered, and under these circumstances it was held that there was no extension in the time of payment by the receipt of the note; and what was said in Calvo v. Davies, 73 N. Y. 211, 29 Am. Rep. 130, that the agreement does not operate as an absolute, but only as a qualified and conditional, suspension of the right of action, and is treated, in effect, as if it was made, in express terms, subject to the consent of the surety, and the surety is not thereby discharged, was cited with approval. In Calvo v. Davies it was held that the sureties were discharged because by the agreement the right of the creditor to proceed at once against the principal debtor was postponed. In all of the cases to which our attention has been called, in which an exception to the general rule that any act of the creditor, which tended to release the principal debtor from his obligation or changed the relation of the parties, discharged the sureties, was upheld, there was, as a part of the agreement which effectuated the release, or as a part of the

act done which changed the relation that existed between the principal debtor and the creditor, an express reservation of the right against the surety, or an agreement that the release should not be construed as releasing the right of the creditor to enforce the obligation against the sureties; and, this having been agreed to by the debtor, the debtor would be estopped from setting up, in any action brought by the surety against him, that this instrument should have the effect of changing the relations that existed between himself and the creditor.

We do not think that the facts in this case bring it within the exception to the general rule which is sought to be applied by the defendant. As before stated, when the defendant obtained this judgment against the maker of the note, the obligation of the maker to the holder was merged in the judgment, and the only right of the defendant to enforce that obligation was the enforcement of the judgment; and, this being the situation, the plaintiff had the absolute right, upon the payment of the note, to have the judgment against the maker of the note transferred to him, or that he be subrogated to the right of the defendant to collect that judgment. As was said in Shutts v. Fingar, supra, upon the payment of such obligation the indorser is entitled to demand its possession from the creditor, with the right of subrogation to all securities and remedies possessed by him against the prior parties thereon, unimpaired by any act or laches of such creditor. While the judgment against the maker continued to be the property of the defendant, if the plaintiff came in and tendered the amount of the note to the defendant the plaintiff would have been entitled to become subrogated to the right of the defendant to enforce that judgment. By the act of the defendant in transferring that judgment to Hiller, the defendant has put it out of its power to comply with this obligation; and from this it follows that the plaintiff was discharged.

I have discussed the question assuming that the effect of this transfer is to be determined by the law of the state of New York, and not by the law of the state of Louisiana. It would seem, however, that, so far as the effect of the transfer of the judgment from the defendant to Hiller and its effect upon the obligations of the maker of the note are concerned, as between the defendant and the maker the law of the state of Louisiana should control. The note was dated and was payable in Louisiana. The judgment was obtained in Louisiana; the transfer of the judgment from the defendant to Hiller was made in Louisiana; and the liability of the maker of the note to the holder at the time it became due was necessarily to be determined by the law of that state. As between the defendant and the plaintiff, the liability of the plaintiff to the defendant as indorser would be governed by the law of the state of New York, that being the place where the instrument was made and the note discounted. There does not, however, seem to be a distinction between the law of Louisiana and New York as to the effect of a discharge of the maker of a note by the holder. In both states it seems that the indorser is discharged unless, by the contract between the maker and the holder, the right of the indorser to pro-

ceed against the maker in case he pays the note is reserved. What is claimed by the defendant is that this oral agreement upon which the transfer of the judgment was made so affected the transfer of the Louisiana judgment that in case the plaintiff paid the balance due on the note he would have recourse against the maker of the note. The construction of that agreement, and the effect to be given to it or its validity under the law of the state of Louisiana, is the question.

If, under the Louisiana law, this oral agreement, limiting the effect of the transfer or subrogation of the judgment was invalid and could not be proved to bind the maker of the note, so that if the plaintiff should pay the balance due on the note he could not recover from the maker in Louisiana the amount that he had paid, it would seem that the defendant cannot take advantage of the oral agreement to hold the plaintiff liable upon his indorsement, and it would seem from the evidence that under the Civil Code of Louisiana proof of this oral agreement would not be admitted. Article 2276 of the Louisiana Code was read in evidence, and provides: "Neither shall parol evidence be admitted against or beyond what is contained in the acts, nor on what may have been said before or at the time of making them, or since." And the word "acts" in this section of the Code would include such an order of subrogation as was here entered at the instance of the defendant. The liability of the plaintiff to the defendant upon this instrument is to be governed by the law of the state of New York. The law of the state of New York is that any act by the creditor which discharges the debtor, so that the surety cannot have recourse against the debtor if he pays the debt, or any act of the creditor which puts it out of his power to comply with his obligation to give to the surety all securities or remedies that he has against the debtor for the payment of the debt, discharges the surety. By this transfer of the judgment under the law of Louisiana, the defendant has put it out of his power to transfer to the surety, the plaintiff, the judgment obtained against the debtor, in which was merged the obligation of the debtor to pay the note upon which the plaintiff was the surety or indorser, and which had discharged the debtor from all obligations upon the note according to the law of Louisiana; and thus, by the law of this state, the indorser was discharged.

It follows, therefore, that the learned referee was right in holding that the plaintiff was entitled to recover, and the judgment must be affirmed, with costs. All concur.