ULSTER COUNTY SAVINGS INSTITUTION v. DEYO et al.

(Supreme Court, Appellate Division, Third Department.   November 14, 1906.)

LIMITATION OF ACTIONS—ACKNOWLEDGMENT OF DEBT—PAYMENT OF INTEREST—EFFECT ON SURETY.

A treasurer of a corporation, who was surety on its note, made semiannual payments of interest on the note by sending checks of the firm of which he was a member, accompanied by letters signed individually, and reading, "Inclosed find check of" the firm, "to pay interest on mortgage of" the corporation. The receipts returned read, "Received from" the corporation, without mentioning the surety. The treasurer of the creditor corporation did not know that the person sending the money was the treasurer of the debtor corporation, nor that he was liable on the note. The receipts were according to the form and custom of the treasurer. *Held* to show a payment by the corporation rather than a payment constituting a recognition of the debt, and an implied promise to pay by the surety, necessary to toll the statute.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Limitation of Actions, §§ 623–630.]

Kellogg, J., dissenting.

Appeal from Special Term, Ulster County.

Action by the Ulster County Savings Institution against Philip Deyo and another, as personal representatives of Solomon Deyo, deceased. From a judgment in favor of defendants, plaintiff appeals.   Affirmed.

The action is brought to foreclose a mortgage given by the New Paltz Literary Association, a domestic corporation, upon the 22d day of September, 1871, for $3,000. · Upon the bond secured by the mortgage several persons appear as signers, one of whom was Solomon Deyo, defendants' intestate. The defendants, as such administrators, were sought to be made liable for any deficiency arising upon the sale of the mortgaged property. The defense was based upon the statute of limitations, which defense was sustained by the Trial Court, and from the judgment denying the plaintiff this relief sought this appeal has been taken. Further facts appear in the opinion.

Argued before PARKER, P. J., and SMITH, CHESTER, KELLOGG, and COCHRANE, JJ.

F. E. W. Barrow (Howard Chipp, of counsel), for appellant.
J. N. Vanderlyn (John J. Linson, of counsel), for respondents.

SMITH, J. More than 20 years had elapsed since the accruing of the liability of Solomon Deyo prior to the commencement of the action. The bar of the statute of limitations is sought to be avoided by certain payments of interest made by Solomon Deyo during the years from 1899 to 1903. The sole question for determination is as to the effect of these payments of interest as being such a renewal of the obligation as to prevent the running of the statute. Solomon Deyo was the secretary and treasurer of the corporation. From the real estate owned by the corporation ·the rents were collected by Deyo. He paid all charges against the property. It appears that he did not keep a separate account in the bank as treasurer of this corporation. When the semiannual interest upon this mortgage was paid by him, it was invariably paid by a check upon the mercantile firm of which he was a member and was accompanied by a letter, of which the following is a sample:

"New Paltz, Jany. 25, 1899.

"Jno. B. Alliger, Treasurer—Dear Sir: Inclosed find check of S. Deyo & Son for seventy-five dollars, to pay interest on mortgage of the New Paltz Literary Association due Jany. 1.
　"Please acknowledge and oblige.
　　"Yours truly,　　　　　　　　　　　　　　　Solomon Deyo."

John B. Alliger, as the plaintiff's treasurer, returned to said Deyo a receipt in substantial form as follows:

"No. 179½.　　　　　　　　　　　　　Kingston, N. Y., Jan. 26, 1899.
　　　　　　　　　Ulster County Savings Institution.

"Received from New Paltz Literary Association seventy-five dollars for interest due on bond and mortgage to Jan. 1st, 1899.
"$75.　　　　　　　　　　　　　　Jno. B. Alliger, Treasurer."

Upon the witness stand Mr. Alliger swore that he did not know that Solomon Deyo was the treasurer of the institution, and that the receipt was given in form as a receipt from the New Paltz Literary Association according to a custom to receipt as from the mortgagor all interest received upon mortgages held by the bank. It does not appear in the case that he knew that Solomon Deyo was liable in any way for the debt. The Trial Court has found that Solomon Deyo paid no part of said bond and mortgage or interest, except as treasurer of the New Paltz Literary Association, for which he made payments of semiannual interest, and that the plaintiff understood at the time of the receipt of said pay-

ments that the said payments were being made by the said New Paltz Literary Association, and that said payments were in fact made by said association. It is found, however, in answer to a request, that these payments were made by checks upon the mercantile firm of which Solomon Deyo was a member. As a conclusion of law the court finds that the statute of limitations is a complete bar to the liability of the estate of Solomon Deyo. These conclusions the appellants challenge as not warranted by the undisputed evidence in the case. In Littlefield v. Littlefield, 91 N. Y. 203, 43 Am. Rep. 663, one of three makers of a joint and several promissory note, who in fact signed as surety, upon being applied to for payment, requested the payee to tell the principal that he must make a payment thereon, and that he (the surety) said so. The payee made the statement to the principal as requested, who promised to and did subsequently make a payment. This he reported to the surety, who, in response, stated that it was all right. In an action upon the note held that these facts did not show an authority conferred upon the principal to make a payment as the agent of the surety, so as to take the case as to the latter out of the statute of limitations; also, that they failed to establish a ratification of the payment. In Matteson v. Palser, 56 App. Div. 97, 67 N. Y. Supp. 612, Judge O'Brien, in writing for the First Department, says:

"The burden is always on the party seeking to charge another to show that the payments necessary to take the debt out of the statute were made by the debtor for his own account and with reference to that particular debt."

In McMullen v. Rafferty, 89 N. Y. 459, Earl, J., in writing for the court, says:

"But it is the settled law of this state that payments made by one joint contractor cannot save from the statute of limitations a claim against another joint contractor, and that payments made by the principal debtor cannot save from the statute a claim against the surety; and it makes no difference that the payments were made with the knowledge of the other party liable for the same debt. To make payments effective against a party to save a claim from the statute, they must have been made by him, or for him by his authorized agent. One joint contractor may make payments as agent for all the contractors, or the principal debtor may make payments for and in the name of his surety as his agent, or payments may thus be made in the name of all the joint contractors, or of the surety without previous authority, but be subsequently ratified, and in all such cases the running of the statute may be prevented. First National Bank of Utica v. Ballou, 49 N. Y. 155. But in all cases, to make the payments effective, they must by previous authorization or subsequent ratification be the payments of the party sought to be affected by them."

In the Matter of Petrie, 82 Hun, 62, 31 N. Y. Supp. 65, the headnote, in part, reads:

"To make payments effective against a party to save a claim from the statute of limitations, they must have been made by him, or for him by his authorized agent. In all cases they must be, by previous authorization or subsequent ratification, the payments of the party sought to be affected by them."

In Blair v. Lynch, 105 N. Y. 636, 11 N. E. 947, it is held a payment such as will avert the statute of limitations as a bar must be a conscious and voluntary act on the part of the debtor, explainable only as a recog-

nition and confession of the existing liability. In Lang v. Gage, 65 N. H. 173, 18 Atl. 795, the headnote reads:

"The defendant signed a note as surety, and the principals gave him a mortgage to secure his liability. Afterwards he assigned the mortgage to a savings bank of which he was an officer, to be held as security for this and other similar notes mentioned in it. The bank foreclosed and sold the property, and from time to time the defendant, as an officer of the bank, paid various sums on the note from the proceeds; some of the payments being made within six years before the commencement of the suit. *Held,* that payments so made were not evidence from which the jury could find a new promise by the defendant."

In Dick v. Williams, 130 Pa. 42, 18 Atl. 615, the rule is stated by Mr. Justice Williams as follows:

"In an action against partners upon a note, the mere fact that one of the defendants, being indebted to his copartner, paid the amount of such indebtedness by his direction to the holder of the note, who applied the money as a credit thereon, making an indorsement to that effect in the presence of the defendant paying, will not of itself toll the bar of the statute as to such defendant."

If, then, the payment in order to avoid the statute must be such as constitutes a recognition of the debt, and implies a promise to pay in full, we must agree with the Trial Court that there is here found no such recognition by Solomon Deyo of a personal debt or implied promise to pay the same. While the payment was in fact from the funds of the mercantile firm of which he was a member, Solomon Deyo was the treasurer of the association, in receipt of the income of the association, with a legal duty, as treasurer, to pay this interest. His payment was a distinct recognition of the liabilty of the association, and from it an implied promise could be found that the association would pay the balance of the liability. Not a suggestion is found of a recognition of any personal liability or of any implied promise to remain personally bound as surety for the debt. The finding of the Special Term that these moneys were received and understood to be payments from the mortgagor is amply supported by the receipts given. At least there can be no pretense that they were supposed to be payments by a surety in recognition of his obligation as surety. The doctrine that a joint obligor or surety may be bound by acquiescence in a payment made by his co-obligor or principal does not seem to be a part of the law of this state. No stronger instance of acquiescence can be found than the case of Littlefield v. Littlefield, supra, in which it was held that the party acquiescing was not bound. The payments made by Solomon Deyo were not payments made for him, as seems to be required under the authorities to create such a recognition of the debt as will avoid the bar of the statute. They were paid and received for the New Paltz Literary Association, and can only be effective to avoid the statute as to that association. We are of opinion, therefore, that the judgment below was right and must be affirmed.

Judgment affirmed, with costs. All concur, except KELLOGG, J., dissenting in separate opinion; PARKER, P. J., not voting.

JOHN M. KELLOGG, J. (dissenting). The payments upon the mortgage were all made by Deyo with his money, and were paid

generally. In fact, the savings bank, the owner of the mortgage, did not know that he was treasurer of the literary association, and he did no act indicating to it that he was making the payment as such treasurer. While the receipts were issued in the name of the association, it was done according to the usual custom of the savings bank and because the association was the mortgagor. It was not done at the request of Deyo, or for any other purpose, except in pursuance of this custom and for convenience. There is nothing, therefore, tending to show that the payment was not intended and understood as that of Deyo. The letters inclosing the checks were his personal letters, and not the letters of the association. The checks were drawn by him in the name of his mercantile firm upon the bank with which it dealt, but the mercantile firm never had any of the rent money and had no dealings with the literary association. It does not appear what rents Deyo collected from the property of the association, or that they were any substantial part of the payments which he made to the savings bank. It requires imagination to put life into the association. The only record of its proceedings since September, 1885, is as follows: At the annual meeting September 19, 1885, no one was present but the president and secretary (Deyo), and there was no election. The stockholders met September 18, 1896, and 13 trustees were elected, of which Mr. Deyo was one. September 28, 1896, at a meeting of the trustees, a chairman was elected, Mr. Deyo was chosen secretary, and, no quorum being present, the meeting adjourned to October 2d. October 2d a quorum was present and Mr. Lefevre was chosen president and Mr. Deyo secretary and treasurer, and Mr. Craig was appointed a committee to see Mr. Lefevre and make some arrangement for the payment of a judgment against the association. No other meetings or proceedings seem to have been taken by the association as a corporate body since 1885. The only trustee sworn as a witness did not even know that he had been a trustee. No one seems to have taken any action with reference to this property or its operations, or with reference to this mortgage debt, except Mr. Deyo, and we may fairly assume that no one was concerned in paying the interest upon the mortgage except Mr. Deyo, and that his interest in it was because he was liable upon the bond, and he apparently was getting what rents could be realized from the seemingly abandoned property and applying them to liquidate the obligation upon which he was personally liable. He kept no account of his proceedings, rendered no account to the association, and apparently kept no account with the association. Whatever he received from rents lessened just so much the obligation he was under as a maker of the bond, and postponed the day when he must be called upon to make it good, and he alone was interested.

There is no claim of any authority or direction from the association to pay the interest or collect the rents. Having paid the interest with his own money, he had a legal offset against any rents which he received or might have received from the association, and the evidence shows that the association was indebted to him in a considerable amount, probably arising from the fact that he had paid out more interest than he had received in rents. Where there are two parties liable upon an instrument and payments are made by one, such payments do not keep

alive the debt against the other party unless he is shown in some way to be a party to the payment, and the cases cited in the prevailing opinion bear upon such a case. They do not bear upon a case where the party actually making the payments seeks to avoid the effect of the payments made by him with his own money, under circumstances where he alone was interested in having the payment made. Where sureties upon a note understood that the principal part of the note had been paid from the proceeds of the property of the original debtor, and they paid the small balance unpaid, believing that it paid the note in full, the holder of the note having the same understanding and delivering the note to them, and it subsequently developed that the judgment by which the previous moneys applied upon the note had been received was reversed, and a restitution was necessary—it was held that a payment made under such circumstances by the sureties kept alive the obligation against them, although they supposed at the time they were recognizing no further liability; the court saying:

"Under these circumstances the payments made by the defendants may be deemed to have been made upon the note generally in the ordinary way." Jefferson Co. National Bank v. Dewey, 181 N. Y. 98, 73 N. E. 569.

In other words, by making the payments they recognized that the note at the time was a valid obligation. But, as a matter of fact, it would be difficult to imply a promise by them to pay a note which they understood had been already paid and which had been surrendered to them. Here the payments were made upon the bond generally, and in the ordinary way by the defendant himself, and it would seem that there can be no question that he recognized the bond as a valid obligation because he paid the money upon it. These payments of interest were made by some one, and it seems much more reasonable to hold that they were acts of Deyo and kept the obligation alive as to him than to hold that they were the payments of the literary association and kept the obligation alive as to it. It is a grave injustice to the savings bank which did not know that Deyo was treasurer now to hold that he made no payments, but that the literary association did, and it is giving the acts of Deyo a different construction than his conduct shows he intended they should have.

I favor a reversal of the judgment both upon the law and the facts.