Sadie Brill and Hortense Brill, as Administratrices, etc., of Sol Brill, Deceased, Plaintiffs, *v.* Harry Brandt and Sidney Satenstein, Defendants.

Supreme Court, Trial Term, New York County, February 14, 1941.

*Schwartz & Frohlich,* for the plaintiffs.

*Weisman, Celler, Quinn, Allan & Spett,* for the defendant Harry Brandt.

*Robert Abelow,* for the defendant Sidney Satenstein.

VALENTE, J. The contention that plaintiffs were discharged from liability upon the note by the discharge of Brandt, despite the bank's reservation of its rights against all other parties to the instrument, is based upon subdivision 3 of section 201 of the Negotiable Instruments Law. Under the provisions of a subsequent statute, however, the obligee's release or discharge of one or more of several obligors does not discharge co-obligors against whom the obligee, in writing, as part of the same transaction as the release or discharge, expressly reserves his rights. (Debtor and Creditor Law, § 234.) All the parties to the note were " several obligors " within the meaning of section 234 *(supra),* for section 231 of the Debtor and Creditor Law defines " several obligors " as " obligors severally bound for the same performance " and all the parties to the note were severally bound for its performance by payment. That section 234 *(supra)* supersedes section 3 of section 201 of the Negotiable Instruments Law, to the extent that it is inconsistent therewith, seems to be clear from the language of section 240 of the Debtor and Creditor Law, which reads as follows:

" All acts or parts of acts inconsistent with this article are hereby repealed; but nothing in this article shall be construed as repealing any of the provisions of the Civil Practice Act or the Partnership Law."

Assuming, therefore, that under subdivision 3 of section 201 of the Negotiable Instruments Law plaintiffs would have been discharged by the bank's release of Brandt, notwithstanding the bank's reservation of its rights against all other persons liable on the note, the effect of section 234 of the Debtor and Creditor Law was to preserve the bank's rights against plaintiffs. It follows that the payment made by the latter to the bank was not a gratuity but rather a payment for which it was liable to the bank. *A fortiori,* the bank's release of Satenstein did not extinguish plaintiffs' liability to the bank. This is so under section 234 of the Debtor and Creditor Law, and also under subdivision 5 of section 201 of the Negotiable Instruments Law, which expressly states that the release of the principal debtor does not discharge a person secondarily liable on the instrument if the holder's right of recourse against the party secondarily liable is expressly reserved.

It is argued by defendants that the note itself became merged in the judgments upon the note which the bank obtained against Brandt and Satenstein, respectively, and that the bank's assign-

ment of the judgment against Brandt to his nominee and the latter's satisfaction thereof as well as the bank's satisfaction of its judgment against Satenstein, had the effect of destroying plaintiffs' right of subrogation to the judgments on payment by plaintiffs of the balance due. Defendants contend that since the note was extinguished by the judgments obtained by the bank and the judgments themselves were satisfied, nothing remained to which plaintiffs could be subrogated, with the result that plaintiffs were left without any means of recouping from Brandt and Satenstein, as prior parties to the instrument, the amount paid by plaintiffs to the bank. Accordingly, it is urged that the assignment of the judgment against Brandt and the satisfaction of that judgment and of the judgment against Satenstein discharged the p'aintiffs from liability to the bank and thus rendered their payment to the latter a voluntary gratuity which they may not compel the defendants to reimburse. In *Spies* v. *National City Bank* (68 App. Div. 70) the Appellate Division of this department expressed the view that under the law of this State (as distinguished from the law of Louisiana, which was also involved in the case) an assignment to the nominee of the maker of a note of a judgment obtained against the maker by the holder would not have discharged other parties to the instrument if the assignment had been accompanied by a written reservation of the assignor's rights against such other parties. It was only because the Appellate Division found that the reservation of rights was oral and prior to the assignment rather than contemporaneous with it that it reached the conclusion that under our law subsequent parties to the instrument were discharged by the assignment of the judgment to the maker's nominee. This decision was affirmed by the Court of Appeals (174 N. Y. 222). The opinion of the Court of Appeals throws no light upon that court's views as to the effect under the law of *this* State of a reservation by the assignor of the judgment of his rights against other parties to the instrument. The Court of Appeals took the position that the law of Louisiana was controlling as to the effect of such a reservation of rights and, accordingly, felt itself bound by the finding of fact of the referee (which had been affirmed by the Appellate Division) that under the law of *Louisiana* such a reservation was ineffective.

Under these circumstances, the opinion as to the law of *New York* expressed by the Appellate Division, the highest court which has indicated its views on the subject, must be accepted as controlling in the instant case. The assignment of the bank's judgment to Brandt's nominee transfers all the bank's right, title and interest in and to the judgment " as against Harry Brandt only."

It is not clear, however, whether the quoted language was intended to qualify the assignment or merely to modify the word " judgment." Support for the construction that the words " as against Harry Brandt only " were designed to qualify the assignment rather than to describe the judgment is to be found in the subsequent reference to the judgment as having been entered " as against Harry Brandt only." This repetition of the words " as against Harry Brandt only " would be wholly unnecessary and superfluous if the prior use of those words was intended to describe the judgment rather than to qualify the assignment. If the assignment of the bank's judgment to Brandt's nominee was " as against Harry Brandt only," that was only another way of saying that the assignor's rights against all other persons were reserved  It is unnecessary, however, to determine the proper interpretation of the assignment in the respect indicated, for even if the words " as against Harry Brandt only " were merely descriptive of the judgment, the dealings between the bank and Brandt clearly and expressly contemplated a reservation of the bank's rights against all other parties liable on the instrument.

The order of compromise approved by this court expressly directed that all rights of the bank against other parties were to be reserved and the general release executed and delivered as part of the same transaction contained such an express reservation. The correspondence between the bank and Brandt's attorney also indicates that it was one of the essential terms of the compromise and of the assignment of the judgment that the bank's rights against all other parties to the instrument be reserved.

The effect of the reservation of the bank's rights against other parties to the instrument was to preserve the right of subrogation of subsequent parties who might pay the instrument, a right which would have been destroyed in the absence of the reservation. Thus, in *National Park Bank* v. *Koehler* (204 N. Y. 174) the Court of Appeals pointed out (at pp. 179, 180) that the reservation of a creditor's rights against an indorser put the latter in a position to pay immediately and proceed against the principal debtor, despite an extension agreement entered into by the creditor with the principal debtor. So here, the effect of the reservation was to place plaintiffs in a position on paying the bank to proceed against Brandt and Satenstein, notwithstanding the bank's having released them. Nor was plaintiffs' right to be subrogated to the bank's rights against Brandt affected or impaired by the satisfaction of the judgment against Brandt after the bank had assigned it to his nominee. Brandt had, as part of the settlement with the bank, agreed, in effect, that the rights of plaintiffs would not be

affected by his release or by the assignment or satisfaction of the judgment against him. Similarly, the bank's satisfaction of its judgment against Satenstein did not impair plaintiffs' right to enforce the judgment as subrogee thereof, since the satisfaction itself expressly reserved the bank's rights against all other parties to the indebtedness or obligation which had resulted in the judgment. The provisions of section 234 of the Debtor and Creditor Law which authorize an obligee to discharge one of several obligors and reserve his rights against others would seem to be equally applicable where the obligee's rights have taken the form of a judgment as they are to a situation where the obligee has not yet obtained a judgment. The same principle should govern whether the obligee executes a general release of a non-judgment claim or executes a satisfaction of a claim reduced to judgment.

The court accordingly holds that neither the releases nor the assignment of the judgment to Brandt nor the satisfaction of the judgments against Brandt and Santenstein discharged plaintiffs' liability to the bank. The payment made by plaintiffs to the bank was, therefore, a payment which they were obligated to make.

There remains for consideration the question of the Statute of Limitations. The proof failed to establish plaintiffs' claim that their testator was an accommodation indorser and the court accordingly holds that plaintiffs' testator was an indorser for value.

Defendants contend that the statute began to run not at the time plaintiffs made payment to the bank, but rather at the maturity date of the note, March 1, 1931, relying upon *Blanchard* v. *Blanchard* (201 N. Y. 134) and *Woodruff* v. *Moore* (8 Barb. 171). The cited cases, however, relate to the running of the Statute of Limitations in favor of the maker of a note. They do not decide the question of when the statute begins to run in favor of a prior indorser in an action by a subsequent indorser. It would seem that the statute does not start running in favor of an indorser as against his indorsee until payment is actually made by the latter. (*Butler* v. *Wright*, 2 Wend. 369; 17 R. C. L. 775, § 143.) The present action was commenced less than six years after plaintiffs made payment to the bank and, therefore, the defendant Brandt may not successfully interpose the defense of the Statute of Limitations.

Even if the view be taken, however, that the statute commenced to run in favor of both Brandt and Satenstein at the maturity date of the note, March 1, 1931, the court is of the opinion that the action is not barred by the statute. It is true that the part payments made by Brandt and Satenstein to the bank did not have the effect of tolling the statute, since they were made in full

satisfaction of the bank's claims against them, and, therefore, no promise to pay the balance due to the bank could be implied. (*Crow* v. *Gleason*, 141 N. Y. 489, 493; *Jefferson County National Bank* v. *Dewey*, 181 id. 98, 106; *Ulster County Savings Institution* v. *Deyo*, 116 App. Div. 1, 5; *Compton* v. *Bowns*, 5 Misc. 213.) The writings signed by the duly authorized attorneys for Brandt and Satenstein offering to settle and compromise the judgments obtained by the bank against them, respectively, are, however, acknowledgments sufficient to satisfy section 59 of the Civil Practice Act, and, therefore, toll the statute as to them. Oral evidence is admissible to identify the indebtedness referred to in the writings. (*Watkins* v. *Jones*, 63 Hun, 106.) It is sufficient for the purposes of section 59 of the Civil Practice Act, that the writing acknowledges the debt and contains nothing inconsistent with an intention to pay the same. (*Matter of Povill*, 105 F. [2d] 157; *Lincoln-Alliance Bank & Trust Co.* v. *Fisher*, 247 App. Div. 465.) The letters in question, although written in an attempt to compromise the judgments for less than their full value, are not inconsistent with an intention to pay the same in the event that settlement negotiations should fail. (See *Cudd* v. *Jones*, 63 Hun, 142.) They contain no suggestion of an intent to repudiate or dispute the indebtedness of Brandt and Satenstein to the bank upon the judgments obtained against them.

For the reasons indicated, the court is of the opinion that the plaintiffs are entitled to prevail in this action. Judgment is accordingly directed in their favor for the amount sued for, together with interest and costs and disbursements of the action.