## UNITED STATES v. CURTISS AEROPLANE CO. et al.

District Court, S. D. New York.
Oct. 7, 1943.

For former opinion, see 50 F.Supp. 477.

James B. M. McNally, U. S. Atty., of New York City (Daniel M. Sandomire, Lester S. Jayson, and Howard N. Meyer, Sp. Assts. to Atty. Gen., all of New York City, of counsel), for plaintiff.

Spence, Windels, Walser, Hotchkiss & Angell, of New York City (Kenneth M. Spence and Soia Mentschikoff, both of New York City, of counsel), for defendants.

RIFKIND, District Judge.

In support of the motion for reargument plaintiff presents additional facts by affidavit and advances two arguments, of which, one was disavowed upon the original hearing, and one is new and founded upon the newly adduced facts.

The previously disavowed argument is that the agreement of March 15, 1922, should be given effect as an acknowledgment of debt sufficient to take the claim out of the operation of the statute of limitations. In support of this proposition plaintiff relies heavily upon the unreported decision (previously undiscovered) of the Special Term of the New York Supreme Court in Van Schaick v. Metz, 1935, affirmed without opinion 244 App.Div. 719, 279 N.Y.S. 988. In that case effect was given to the following written stipulation:

"The undersigned, at one time, or another, directors of General Surety Company, hereby agree that they and none of them will plead other or differently to an action, if any is hereafter begun by the Superintendent of Insurance, than they could plead if said action were begun and process duly served as of this date.

"The consideration for the foregoing is the granting of time to the undersigned to make investigation of the books and records of the General Surety Company and its affiliates, now in the custody of the Superintendent of Insurance."

In rejecting the plea of the statute of limitations subsequently interposed, the Court relied on Woods v. Board of Sup'rs, 1893, 136 N.Y. 403, 32 N.E. 1011.

Woods v. Board of Sup'rs has been considered in my previous opinion. Reference was not made, however, to the concluding language of the resolution there found sufficient, which read: "and hereby, for value received, promise and agree to refund to said several towns and villages the amount of such tax so levied and collected by said county for the year 1882 when the same shall be ascertained."

Plaintiff recognizes that its contention leads to the inescapable conclusion that any written enlargement of the statute of limitations is valid; and it does not flinch therefrom. It finds justification for that conclusion in Section 59, New York Civil Practice Act, which is New York's version of Lord Tenterden's Act, 9 George IV, C. 14. Before we examine the New York decisions construing Section 59 it should moreover be noted that plaintiff's position compels a reading of Section 10, New York Civil Practice Act as entirely unconcerned with enlargements of the period of limitations. I am utterly unable to find such exclusion and limitation in the language of Section 10; and such construction would eliminate any statutory basis for the decisions noted in my previous opinion which refused to give effect to enlargements of the period of limitation agreed upon at the inception of liability.

The agreement of 1922 does not in fact contain any acknowledgment of a debt nor a promise to pay anything. The issue squarely raised on this motion is whether, nonetheless, it satisfies Section 59 of the New York Civil Practice Act. If the Metz case is the law of New York, then the answer is yes. None of the authorities cited by plaintiff except the Metz case go that far. Lincoln-Alliance Bank & Trust Co. v. Fisher, 4th Dept., 247 App.Div. 465, 286 N.Y.S. 722; Brill v. Brandt, 176 Misc. 580, 26 N.Y.S.2d 477, affirmed 263 App.Div. 811, 31 N.Y.S.2d 674, affirmed 289 N.Y. 581, 43 N.E.2d 718; In re Estate of Steele, 262 App.Div. 938, 29 N.Y.S.2d 409; affirmed 289 N.Y. 716, 46 N.E.2d 344; McCahill v. Mehrbach, 37 Hun, N.Y., 504; Chace v. Higgins, 3rd Dept., 1 Thomp. and C., N.Y., 229. The general rule in New York was stated by the Court of Appeals in Wakeman v. Sherman, 1853, 9 N.Y. 85, 91. The Court said: "The rule with us, as I am inclined to think, is, that to revive a demand thus barred, there must be an express promise to pay, either absolute or conditional, or an acknowledgment of the debt as subsisting, made under such circumstances that such a promise may be fairly implied."

The rule was quoted and approved in Connecticut Trust & S. D. Co. v. Wead, 1902, 172 N.Y. 497, 500, 65 N.E. 261, 92

Am.St.Rep. 756. And this is the rule which the Circuit Court of Appeals of this Circuit in 1940 acted on in Downey v. Palmer, 2 Cir., 1940, 114 F.2d 116. And see In re Povill, 2 Cir., 1939, 105 F.2d 157.

None of the authorities examined requires a holding that a writing which is compatible only with rejection of the claim and the assertion of a counterclaim must be construed as an acknowledgment of debt and a promise to pay the same. Even the Metz case hardly goes that far, and in view of Wakeman v. Sherman and Connecticut v. Wead, I do not think that the Metz case represents the New York law which the Federal courts must apply. Loughman v. Town of Pelham, 2 Cir., 1942, 126 F.2d 714. According to Shapley v. Abbott, 1870, 42 N.Y. 443, 1 Am.Rep. 548, Section 110 of the New York Code of Procedure, the predecessor of Section 59, Civil Practice Act, changed the common law only to the extent of requiring a writing to prove that which could before the statute rest in parol. There the Court said that prior to the statute the defendant's oral statement, "If the note did outlaw he would not plead the statute of limitations on it," would have been a sufficient acknowledgment. There we had at least an acknowledgment that a note existed. Nevertheless the Court qualified its opinion by saying: "It seems to me that this language, *without anything to qualify it or weaken its force,* furnishes very conclusive proof of an acknowledgment of the debt." (My italics.) In the instant case the agreement of 1922 lends itself to no such construction.

I conclude that the agreement of 1922 cannot be given effect as an acknowledgment of debt under Section 59, Civil Practice Act.

▇ The second argument, newly advanced by plaintiff upon this motion for reargument, is that this case is not governed by the rule of Guaranty Trust Co. v. United States, 1938, 304 U.S. 126, 58 S.Ct. 785, 82 L.Ed. 1224, relied upon in the previous opinion for the proposition that the New York statute of limitations is applicable. The argument is two-pronged. First it is suggested that recognition of the Soviet regime in 1933 is retroactive in effect (United States v. Pink, 1942, 315 U.S. 203, 62 S.Ct. 552, 86 L.Ed. 796) and that it follows, as a corollary, that the presence of the Provisional Government representatives in the United States and their continued reception and recognition by the political branch of our Government must be given no legal significance. From these premises we are asked to deduce that Bakhmeteff, the Russian Ambassador, should be deemed not to have had access to our courts, though in fact he had; and that the Soviet Government should be held not to have had access to the courts because in fact it had not any. If this reasoning is acceptable, then the ground of the Guaranty case would be missing and presumably the rule would not be applicable.

The plaintiff of necessity recognizes that the foregoing argument alone could not stand, for the Guaranty case expressly excluded the statute of limitations from the operation of the rule of retrospective validation of the acts of a revolutionary government. The Court said (304 U.S. at page 139, 58 S.Ct. at page 792, 82 L.Ed. 1224): "When the question is of the running of the statute of limitations, it is enough that our courts have been open to suit on behalf of the Russian State in whom the right to sue upon the petitioner's present claim was vested, and that the political department of the government has accorded recognition to a government of that state * * *." Plaintiff undertakes to cure this breach in its argument by adducing evidence designed to show that the State Department expressed its wish to Mr. Bakhmeteff that its claim should be delayed. In view of Mr. Bakhmeteff's anomalous position, it is urged that such a suggestion was tantamount to a denial of access to our courts.

I am not aware of any principle or rule which makes access to our courts by a foreign sovereign subject to ad hoc determination by the political arm of the Government. It would introduce a new and confusing uncertainty in dealings between our citizens and foreign states. Reliance upon the passage of time in quieting claims could no longer be had if it might at any time appear, when the claim was asserted, that the State Department had not assented to the assertion of that particular claim by the foreign state and that the statute of limitations had, therefore, not run. My attention has not been called to any authorities sanctioning such a practice and I assuredly have no desire to initiate such a mischief-making rule.

In any event I do not find, in the documents now submitted, a denial by the State Department of access to our courts on the part of Bakhmeteff even in the matter in

issue. True, the State Department undertook to use its influence to dissuade the Russian Ambassador from proceeding with litigation; and it did use its influence to that end. Nowhere, however, does it appear that it forbade him to initiate this litigation or that it regarded the commencement of such litigation as a step which might jeopardize his relations with the United States. No national policy or interest was involved in the discussions between the State Department and Russia's Ambassador. The conversations related to a purely private controversy, and the intervention of the State Department was occasioned by the desire of the Department "now as always to protect any legitimate American interests." (Departmental Memo June 8, 1921.) The interest referred to, was the desire of the defendant to be free of the risk of double liability to suits by the Provisional Government in the United States and the Soviet Government in England. The State Department considered the position of the defendant and recommended the following course, as disclosed in Departmental Memorandum of March 1, 1922:

"Before Messrs. Russell and Cuthell were received by Mr. Dearing, three possible courses for the Department to pursue were discussed. First, the Department could take no interest in the matter and allow the case to go to court without interference in any way. This was considered to be severe on the Company, and inasmuch as the Department is in a measure responsible for the peculiar situation which results from continuing to recognize a Russian Government which has long since fallen, it was felt that the Department should assist the Company in any way that it properly could.

"Second, the Department could insist that the Russian Ambassador refrain entirely from instituting the suit. This was not considered fair to the Ambassador and his Government, as it would deprive them of the right to have the matter adjudicated in the courts and would probably subject the Ambassador to the criticism of not having properly represented his country's interests.

"The third course suggested was for the Department to make no objection to the Ambassador filing the suit, thereby protecting the Russian Government against the statute of limitations, but that the Department should insist that the Ambassador and his attorneys agree with the attorneys of the Company to join in efforts to obtain postponement of trial for whatever time was necessary to relieve the Company of the possible embarrassment to which it is subjected by reason of the peculiar political situation.

"Mr. Dearing thought that the course last described was the one which should be adopted and Messrs. Russell and Cuthell were so informed."

Thus it appears that far from denying the Provisional Government access to the courts in this instance, the State Department refused to alter the status of that Government's representatives and indeed suggested that litigation be commenced. Had the advice of the State Department been taken the present problem would not have arisen.

My conclusion is that nothing has been shown which would warrant a refusal to apply the rule of the Guaranty Trust Co. case, supra, to the instant case.

The motion for reargument is granted and upon such reargument, I adhere to the original decision.