NORDRED REALTIES, INC., Landlord, *v.* JOHN LANGLEY, Tenant.

Municipal Court of New York, Borough of Manhattan, Tenth District,
June 10, 1938.

*Katz & Sommerich* [ *Nathan Ottinger* of counsel], for the landlord.

*Sally Gatling,* for the tenant.

WINTER, J.   In this proceeding to dispossess the tenant for non-payment of an increased rent, he defends by reason of the conceded fact that the landlord has violated section 216 of article 7 of the Multiple Dwelling Law during the period for which the tenant has defaulted in the payment of the rent.   The landlord urges that subdivision 3 of section 302 of the Multiple Dwelling Law (as added by Laws of 1938, chap. 675), the so-called Minkoff Act, on which the tenant relies, is violative of the Constitutions of the State of New York and of the United States in that it takes property without due process of law, impairs the obligation of existing contracts, imposes cruel and inhuman punishments, is discriminatory, and is vague and uncertain.

As I read the Minkoff Act it is designed to force landlords of tenement houses to have their properties fit for human habitation. Sections 210 *et seq.* of article 7 of the Multiple Dwelling Law had already imposed certain rigorous requirements on these landlords with regard to light and air, sanitation and fire protection.   Among these, section 216 has forbidden such landlords to house tenants in cellars, except under specified restrictions.   Instead of quarantining premises which violate these provisions, as subdivisions 1 and 2 of section 302 of the Multiple Dwelling Law have done, the Minkoff Act merely forbids the collection of any increase of rents or the maintenance of any proceeding to dispossess based on such increase during the period while the landlord is violating articles 6 and 7 of the Multiple Dwelling Law.   A similar provision is also found in section 302 of the law suspending the use of the courts to landlords of these properties who have failed to obtain certificates of compliance with the law.

This statute clearly tends to relieve the public from conditions "which constitute a menace to the health, safety, morals, welfare and comfort of the citizens of the State, undermine the standard of living of a large number thereof, tend to impair and impede the enforcement of existing statutes, cause overcrowding and congestion, foster crime, encourage the spread of vice and disease and increase the death rate." This the statute appears to accomplish not by a drastic quarantine of the offending tenement house but merely by a denial of the courts to landlords for the collection of increased rents or to dispossess tenants for non-payment of increased rents. It is hardly necessary to cite the numerous authorities that have upheld this as a valid exercise of the police power of the State. There is nothing so far, in my opinion, that is either confiscatory, unreasonable, *ex post facto*, discriminatory, vague, or is cruel or unusual.

The vice in this statute perhaps lies in its wordy preamble and not in the enacting part. The former recites not only the undoubted existence of an acute shortage of housing for low-income families, caused by the demolition of unsafe, dilapidated and obsolete dwellings, impairing the freedom of contract and inviting oppressive increases of rents for the remaining dwellings available for this class of tenants, but it also finds a shrinkage of rent-paying power in those low-income groups, by reason of all of which wholesale evictions are threatened. It thereupon declares an emergency, constituting a menace to the health, safety, morals and welfare of the citizens of the State. It would seem from these findings that the remedy for this deplorable condition is an extension of the powers of the courts to stay these evictions and to halt these unreasonable increases of rent, both of which have been held to be valid in such emergencies. The Minkoff Act contributes nothing to either of these powers. It merely attempts to induce landlords to make the present available dwellings fit for human habitation. Having complied with the law in this respect, the landlord may then impose and collect rent at any rate that greed and the present emergency suggest. Nor does this act tend in any way, so far as I can see, to increase available dwellings, but rather, as in the instant case, it compels the landlord in many instances to vacate premises which would otherwise be available to low-income families if they complied with the laws regulating sanitation, health and safety. The Minkoff Act, as I see it, should be sustained not so much on the ground that there is an emergency caused by the housing shortage, but because the act is one for the general health, safety and welfare of the public, and as such is valid, emergency or no emergency.

A difficulty that confronts the court in adjusting the rights of the landlord under this act, however, is the provision that a proceeding to dispossess is not maintainable except for non-payment of rent "at such rate as shall not exceed the lowest rent charged therefor for any month between September thirty, nineteen hundred thirty-seven, and March one, nineteen hundred thirty-eight," and that the burden of proving that the rent demanded does not exceed the lowest rent is upon the landlord.

The landlord here has made no demand upon the tenant either for the lowest rent charged during those months nor even for the rent charged in the last month preceding the increase. If he has made a demand it was for an increased rent only. The landlord has not proven nor can he prove that the rent demanded by him does not exceed the lowest rent charged between September 30, 1937, and March 1, 1938. So far as the record shows, the tenant has not been put in default for non-payment of the lowest rent, but there has been merely a demand for and a refusal to pay the increased rent. The parties, however, have stipulated that, in the event the statute is declared constitutional, the petition is to be dismissed upon payment by the tenant of the original rent of forty dollars.

The petition, accordingly, is dismissed on those terms.