**William J. DAWSON, as Receiver of Central Standard Insurance Company, Plaintiff,**

v.

**FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a Corporation, Defendant.**

**Civ. No. 1110.**

United States District Court
D. South Dakota, S. D.

Dec. 21, 1960.

As Amended Jan. 11, 1961.

Woods, Fuller, Shultz & Smith, by F. M. Smith, Sioux Falls, S. D., for plaintiff.

Davenport, Evans, Hurwitz & Smith, by Ellsworth E. Evans, Sioux Falls, S. D., for defendant.

BECK, District Judge.

Defendant, Fidelity and Deposit Company of Maryland, a corporation, on a separate trial[1] of the issues raised by

---

1. "Stipulation for Separate Trial by Court of Certain Issues.

"Whereas, the Defendant above named interposed a Motion for Summary Judgment, as more fully appears from the files and records herein, and said Motion now being before the Court, and the Plaintiff having demanded a jury trial of all issues triable of right by a jury; but it being the mutual desire of the parties to avoid the cost and expense of a long and burdensome trial upon the complicated facts raised by the original Complaint, in the event that the issues raised by the second defense contained in the Defendant's Supplemental Answer dated October 14, 1958, and the Reply thereto dated June 29, 1959, the Defendant's Amended Supplemental Answer dated March 1, 1960, and the Amendment to Plaintiff's Reply dated March 10, 1960, constitute a complete defense to any recovery by Plaintiff from the Defendant by reason of the matters alleged in the original Complaint herein; said matters and issues having arisen by reason of acts and events which occurred subse-

quent to the time of the service of the original Answer herein, and a question having arisen as to whether the Court could properly consider such Motion for Summary Judgment under the existing circumstances, and it being the desire of the parties that all issues arising by reason of the acts and events which occurred subsequent to the serving and filing of the original Complaint and the original Answer herein should be disposed of by the Court prior to a trial of the other issues in order to avoid unnecessary expense and delay, Now, Therefore,

"It Is Stipulated and Agreed by and between the above named Plaintiff and the above named Defendant as follows:

"First, that pursuant to Rule 42(b) [28 U.S.C.A.] the Court in the furtherance of convenience may make and enter an Order ordering a separate trial of the issues raised by the Supplemental pleadings which have been served and filed subsequent to the serving and filing of the original Complaint and the original Answer herein, which issues relate to the alleged Release and the other matters

its second defense,[2] the amendment[3] thereto, the plaintiff's reply[4] and the record made in connection therewith, is on this trial seeking a dismissal of the

which have been raised by the Motion of Defendant for Summary Judgment.

"Second, that each of the parties agrees that said issues shall be tried to the Court, and as to said issues each party waives a jury trial.

"Third, that the Court may forthwith make and enter such an Order herein in accordance with this Stipulation without further notice to the parties or their counsel.

"Fourth, that the Court, if it deems the record before it insufficient or inadequate to dispose of said issues raised by the supplemental pleadings and which relate to acts and events which occurred subsequent to the service and filing of the original Answer herein, may fix a day for the submission of additional proof or additional evidence, but each of the parties expressly waives the right to submit additional proof as to said issues.

"Fifth, that the Court, except as provided in the preceding paragraph, may proceed to dispose of the issues now before it upon the record presented by the Motion of the Defendant for a Summary Judgment, and that in so disposing of said issues the Court shall proceed as *permitted and authorized by said Rule 42(b)*, and the same shall constitute a separate trial to the Court of said issues.

"Dated at the City of Sioux Falls, South Dakota, this 26th day of September, 1960."

The order pursuant to that stipulation, with formal parts omitted, is as follows:

"Upon the reading and filing of the 'Stipulation for Separate Trial by Court of Certain Issues' entered into between the parties to the above entitled action under date of September 26, 1960, and upon all of the files and records herein, it satisfactorily appearing to the Court that in the furtherance of convenience and to avoid prejudice, a separate trial of the issues raised by the events occurring subsequent to the filing of the original Complaint and the original Answer thereto, which said events are raised by the supplemental pleadings served and filed herein, will be for the best interests of each of the parties to the above entitled action and may simplify or eliminate numerous issues which would otherwise have to be decided during the course of the trial upon the main issues raised by the original Complaint and the original Answer thereto; and the Court being fully advised in the premises and good cause appearing:

"It Is Hereby Ordered that all issues raised by the Second Defense contained in Defendant's Supplemental Answer dated October 14, 1958; the Plaintiff's Reply thereto dated June 29, 1959; the Defendant's Amended Supplemental Answer dated and approved by the Court on March 1, 1960; and the Plaintiff's Reply thereto dated March 7, 1960, and approved by the Court on March 23, 1960, shall be in all things tried to the Court without a jury, all other issues raised by the original Complaint and the original Answer thereto to be triable to a jury in the event that such is necessary.

"It Is Further Ordered that such trial to the Court of said issues raised by the aforesaid supplemental pleadings shall be at a time and place to be fixed by the Court, and that an appropriate order fixing such time and place of trial will be entered by the Court hereafter, giving counsel at least ten days' notice of the time and place of such trial."

That order was entered by the court at Aberdeen, South Dakota, on the 13th day of October, 1960.

2. That defense is a part of the supplemental answer of the defendant, dated October 14, 1958, and is as follows:

"Second Defense.

"I.

"The defendant, further answering said Complaint of Plaintiff herein, states that subsequent to the serving and filing of its original Answer herein, Virgil D. Dardi, United Dye & Chemical Corporation, Atlantic Bank of New York, a corporation, being the identical parties named in Plaintiff's Complaint herein, entered into certain negotiations with the Plaintiff in this action. That during the course of said negotiations the said Virgil D. Dardi offered to pay the sum of $8,500 unto the Plaintiff herein; the said United Dye & Chemical Corporation offered to pay the sum of $50,000 unto the Plaintiff herein; and the said Atlantic Bank of New York offered to pay the sum of $25,000 to the Plaintiff herein; such offers being in the form of purported compromises or offers to compromise; that said Plaintiff in this action, being authorized by the Circuit Court, Second Judicial Circuit, within and for the County of Minnehaha, State of South Dakota, being a court of competent jurisdiction in the premises, on or

plaintiff's suit to collect the $50,000 specified in the defendant's "Insurance Companies Blanket Bond." [5]

The request for such dismissal is predicated on the theory that the plaintiff's settlement of a principal's obliga-

about August 14, 1958, did authorize said Plaintiff to accept said offers so made by said Virgil D. Dardi, United Dye & Chemical Corporation and Atlantic Bank of New York; that thereafter said Plaintiff herein did receive and accept the sum of $8,500 from the said Virgil D. Dardi and did execute and deliver to the said Virgil D. Dardi a certain Release, a copy of said Release being attached hereto marked Exhibit 'A' and by this reference made a part hereof as fully as if set forth at length and in detail herein; that said Plaintiff did accept and receive from said United Dye & Chemical Corporation the sum of $50,000 and did execute and deliver a certain Release to said United Dye & Chemical Corporation, a copy of said Release being attached hereto marked Exhibit 'B' and by this reference made a part hereof as fully as if set forth at length and in detail herein; that said Plaintiff did accept and receive from said Atlantic Bank of New York the sum of $25,000, and did execute and deliver to said bank a Release, a copy of said Release being attached hereto marked Exhibit 'C' and by this reference made a part hereof.

"II.

"That the acts of the Plaintiff in making said settlements with said Virgil D. Dardi, United Dye & Chemical Corporation and Atlantic Bank of New York were without the permission or consent of the Defendant; that prior to said settlements so made by the Plaintiff, the Defendant duly tendered the defense of the above entitled action to Virgil D. Dardi, Paul Cliver and Nathan H. Wendell, Jr., as more fully appears from the files and records herein; that the acts of the Plaintiff in releasing the said Virgil D. Dardi, United Dye & Chemical Corporation, and Atlantic Bank of New York destroyed Defendant's right to be indemnified by said Virgil D. Dardi, United Dye & Chemical Corporation and Atlantic Bank of New York for any loss that Defendant may sustain in this action, and the subrogation and indemnity rights and the right of the Defendant to recover from the alleged wrongdoers having thus been deliberately destroyed by the acts of the Plaintiff does operate as a full and final release of the Defendant as the surety or guarantor and bars the recovery by Plaintiff of anything from the Defendant in this action.

"III.

"That neither Paul Cliver nor Nathan H. Wendell, Jr., who are named in the Complaint herein, have any property or assets or means with which to indemnify Defendant, in the event that Plaintiff were to prevail herein, which fact Plaintiff well knew at all times prior to and at the time of the execution of the said Releases hereinabove referred to."

3. This amendment is included in a stipulation between the parties dated March 1, 1960, and is as follows:

"That, following the aforesaid settlements, the Plaintiff stipulated and agreed that the action brought by Plaintiff in the Supreme Court of the State of New York, County of New York, being a Court of competent jurisdiction in the premises, which action was against numerous defendants, including Virgil D. Dardi, United Dye and Chemical Corporation, and Atlantic Bank of New York, should be dismissed upon the merits as to said Virgil D. Dardi, United Dye & Chemical Corporation, and Atlantic Bank of New York; and that a Judgment of Dismissal upon the merits could be entered in said New York action in favor of said Virgil D. Dardi, United Dye & Chemical Corporation, and Atlantic Bank of New York, and against the Plaintiff, and the said Stipulation is in full force and effect at this time."

4. This reply is dated March 7, 1960, paragraph I thereof contains a general denial of all matters set forth in the supplemental answer as amended, except admissions contained in paragraphs II and III, thereof, which provide:

"Admits Paragraph I of the Second Defense in defendant's Supplemental Answer as amended and further admits that prior to the time the settlements set forth and described in Paragraph I of said Second Defense were made defendant's attorneys of record orally advised plaintiff's attorney of record that defendant would take the position that said settlements, if made, would operate to exonerate defendant from liability in the above entitled matter.

"Admits that following the settlement set forth and described in said Paragraph I of said Second Defense of defendant, plaintiff stipulated and agreed that the Action brought by plaintiff in the

tion on said bond and the obligation of others, had operated to discharge the de-

Supreme Court of the State of New York, County of New York, being a Court of competent jurisdiction in the premises, against numerous defendants, including Virgil D. Dardi, United Dye and Chemical Corporation, and Atlantic Bank of New York, be dismissed upon the merits as to the said Virgil D. Dardi, United Dye and Chemical Corporation and Atlantic Bank of New York, and that an Order of Dismissal upon the merits could be entered in said New York Action in favor of said Virgil D. Dardi, United Dye and Chemical Corporation and Atlantic Bank of New York, and that said Stipulation is in full force and effect at this time."

A stipulation relating to amendment to plaintiff's reply to defendant's supplemental answer under date of March 10, 1960, provides as follows:

"That defendant was fully apprised of contemplated settlements with the said Virgil D. Dardi, United Dye and Chemical Corporation and Atlantic Bank of New York in said New York Action prior to the consummation thereof; that thereafter and before consummation of said settlement defendant continued its denial of any and all liability to plaintiff under its said Fidelity Bond; that defendant did not come forward with any offer for payment to plaintiff under said Fidelity Bond and with a request that plaintiff accept the same in lieu of accepting any or all of said offers of settlement; that defendant is now estopped from asserting any defense in this action premised on its exoneration from liability under its said Fidelity Bond by reason of prejudice occurring to defendant through settlements made by plaintiff."

5. This bond, insofar as it is material on this motion and aside from the usual conditions, terms and provisions of surety bonds, in cases of this kind, provides:

"Fidelity and Deposit Company

"Home Office    of Maryland    Baltimore

"Bond No. 49 83 530–B

"Insurance Companies Blanket Bond Standard Form No. 25

"In consideration of an agreed premium, the Fidelity and Deposit Company of Maryland, a corporation of the State of Maryland, with its Home Office in the City of Baltimore, hereinafter referred to as Underwriter, hereby undertakes and agrees to indemnify and hold harmless Central Standard Insurance Company, Sioux Falls, South Dakota, hereinafter referred to as Insured, to an

fendant's thereon as surety and any and all subrogation rights it otherwise could

amount not exceeding Fifty Thousand Dollars ($50,000.00), from and against any losses sustained by the Insured subsequent to noon of the date hereof and while this bond is in force, subject, however, to the paragraph of this bond entitled Indemnity Against Loss Under Prior Bond or Policy, and discovered by the Insured subsequent to noon of the date hereof and prior to the expiration of twelve months after the termination of this bond as an entirety as provided in the first paragraph of Section 12 or in any other manner * * *.

"Definition of Employees

"Wherever used in this bond, Employee and Employees shall be deemed to mean, respectively, one or more of the officers, clerks and other natural persons in the service of the Insured while employed in, at or by any of the Insured's offices while covered under this bond during the currency of this bond and who are compensated by salary, wages or commissions, and whom the Insured has the right to govern and direct at all times in the performance of such service but, not to mean brokers, general agents, subagents, loan agents, fiscal agents, property management agents, real estate agents, or other representatives of the same general character * * *.

"The Losses Covered by
This Bond are as Follows:

"Fidelity.

"(A) Any loss through any dishonest or fraudulent act of any of the Employees, committed anywhere and whether committed alone or in collusion with others, including loss of property through any such act of any of the Employees.

"On Premises.

"(B) Any loss of Property through robbery, burglary, common-law or statutory larceny, theft, false pretenses, hold-up, misplacement, mysterious unexplainable disappearance, damage or destruction (whether effected with or without violence or with or without negligence on the part of any of the Employees) and any loss of subscription, conversion, redemption or deposit privileges through the misplacement or loss of Property, while the Property is (or is supposed to be) within any of the Insured's offices covered under this bond, or within the offices of any banking institutions or clearing houses wherever located, or within any recognized places of safe deposit wherever located, or is actually within the offices of any signature

have asserted: to which the plaintiff replies: (1) that the defendant's obligation on the bond is an absolute undertaking to indemnify and hold harmless, against any loss sustained by the insured, one not qualified or contingent upon a remedy against the principal or others, but contingent only on proof of loss through dishonest or fraudulent acts of any one or more of the principals and (2) on the theory of the defendant being a surety on the bond, that the settlements effected, were but covenants not to sue, hence not a defense.

From that part of the entire record which is material on the questions raised by that defense, it is established and the court finds: (1) that Virgil D. Dardi, Paul Cliver and Nathan H. Wendell, Jr., throughout the period from June 11, 1954 to December 6, 1955, were "employees" of the Central Standard Insurance Company, referred to in said bond and as therein defined; (2) that Central during the period through dishonest or fraudulent acts of its "employees",[6] or some of them, had a loss of property to the extent of $3,177,381.12; (3) that the defendant after the commencement of this action, timely, served "Notice of Suit and Tender of Defense Thereof"[7] on said Dardi, Cliver and Wendell; (4) that Dardi, Cliver, and Wendell failed or refused to accept the tender of defense communicated by the defendant in that notice, (5) that negotiations between the plaintiff, Dardi, United Dye & Chemical Corporation, the Atlantic Bank of New York and Hyman D. Lehrich, another defendant in the New York action, conducted after the commencemnt of this action and service of said notice of tender

companies for the purpose of signature or is actually within the offices of the issuers thereof or of any agents of such issuers for the purpose of issuance, validation, exchange, redemption, conversion, endorsement, transfer or registration, or of any persons employed or authorized by the Insured to procure or manage the issuance, validation, exchange, redemption, conversion, endorsement, transfer or registration thereof or while lodged or deposited with any officer or authority of any State, Province, County, City or political subdivision or with any officer or authority of the Government of the United States of America or of the Dominion of Canada in connection with the Insured's transaction of business in any of the above mentioned places or localities * * *"

6. Dardi, Cliver and Wendell, are charged in the plaintiff's complaint as the ones of its employees whose acts were dishonest and fraudulent and the ones which led to the loss suffered by Central.

7. Dardi, Cliver and Wendell are therein given notice as follows:

"You, and each of you, will please take notice that the above entitled action has been brought by the above named Plaintiff to recover upon a claim, alleging in substance that you, and each of you, did cause Central Standard Insurance Company to sustain a loss and damage in the amount of $3,177,361.12 by reason of your alleged dishonest and fraudulent acts while acting on behalf of said Central Standard Insurance Company, and while acting as officers, directors, and employees of said Central Standard Insurance Company.

"The undersigned, being the Defendant above named, as your surety, under a certain indemnity agreement issued to Central Standard Insurance Company, agreed to indemnify Central Standard Insurance Company against certain dishonest and fraudulent acts committed by certain persons, and as your said surety the undersigned does hereby notify you, and each of you, of the commencement of the above action and does hereby tender to you, and each of you, the defense of said action.

"The undersigned, upon request, will furnish you, and each of you, or counsel selected by you, with copies of the pleadings and other papers pertaining to said suit, and the undersigned has arranged for a continuance or postponement of the trial of the above entitled action so that you, and each of you, is given full opportunity to appear and defend said action.

"You, and each of you, will further take notice that if you fail to appear and defend this action, the undersigned will do so in good faith at your expense, and that you will be bound by the judgment entered in said action; further, that the undersigned will seek full indemnity and costs from you, and each of you, for any and all loss that it may sustain by reason of the above entitled action.

"Dated at the City of Sioux Falls, South Dakota, this 5th day of December, 1957."

of defense, resulted in settlements and payments to the plaintiff as follows: Dardi $8,500, United Dye & Chemical Corporation $50,000, the Atlantic Bank of New York $25,000 and Hyman D. Lehrich $8,500, under the terms and conditions of certain releases [8] executed by the receiver for Central and delivered to the releasees in New York as those sums were paid; (6) that those settlements were effected without permission or consent by the defendant, but with

8. The Dardi Release as to form and contents is identical to the ones under which United Dye & Chemical Corporation, the Atlantic Bank of New York and Hyman D. Lehrich settled with the plaintiff, except for names and amounts, the Dardi one as to form and contents being as follows:

"To All To Whom These Presents Shall Come Or May Concern, Greetings:

"Know Ye, that I, Don Mitchell, as Receiver of Central Standard Insurance Company (hereinafter called 'Central') for and in consideration of the sum of eight thousand five hundred ($8,500) dollars lawful money of the United States of America to me in hand paid by Virgil D. Dardi, the receipt whereof is hereby acknowledged, have remised, released, and forever discharged and by these presents do for myself and Central, jointly and severally, and my and its respective successors and assigns, remise, release and forever discharge the said Virgil D. Dardi, and his heirs, executors, administrators and assigns of and from all, and all manner of action and actions, cause and causes of action, suits, debts, dues, sums of money, accounts, reckoning, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims and demands whatsoever, in law, in admiralty, or in equity, which against said Virgil D. Dardi, I and Central, jointly and severally, ever had, now have or which I and Central, jointly and severally, and my and its respective successors and assigns hereafter can, shall or may have for, upon or by reason of any matter, cause or thing whatsoever (whether now known or unknown) from the beginning of the world to the day of the date of these presents, including, without limiting the generality of the foregoing, all claims asserted by me, as plaintiff, in the second amended complaint in the action now pending in the Supreme Court, New York County, entitled 'Don Mitchell, as Receiver for Central Standard Insurance Company, plaintiff, v. Stewart B. Hopps, et al., Defendants,' provided, however, that I do not release from liability but hereby expressly reserve to myself and Central, jointly and severally, and my and its respective successors and assigns all, and all manner of action and actions, cause and causes of action, suits, debts, dues, sums of money, accounts, reckoning, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims and demands whatsoever, in law, in admiralty, or in equity, which I and Central, jointly and severally ever had, now have or which I and Central, jointly and severally, and my and its respective successors and assigns hereafter can, shall or may have for, upon or by reason of any matter, cause or thing whatsoever (whether now known or unknown) from the beginning of the world to the day of the date of these presents, against any person, firm or corporation other than said Virgil D. Dardi, United Dye & Chemical Corporation, Atlantic Bank of New York, Hyman D. Lehrich and the firm of Lehrich & Lehrich and their respective heirs, executors, administrators, successors and assigns, including, without limitation of the foregoing, each and every debt, contract, agreement, demand, right, claim, cause of action, suit and proceeding which I and Central, jointly and severally, ever had, now have or which I and Central, jointly and severally, and my and its respective successors and assigns hereafter can, shall or may have against Stewart B. Hopps, Lowell M. Birrell, William H. Green, Paul Cliver, Nathan H. Wendell, Jr., Walter E. Riker, Verna E. Skoglund, Roy C. Chapin, Ferro, Berdon & Company, Matthew A. Berdon and Alfred R. Marks, individually and as partners of Ferro, Berdon & Company, and Fidelity & Deposit Company of Maryland, and their respective heirs, executors, administrators, successors and assigns.

"This release may not be changed orally.

"In Witness Whereof, I have hereunto set my hand and seal the 16th day of August, in the year one thousand nine hundred and fifty-eight.

"Sealed and delivered in the presence of
"Don Mitchell            (L.S.)"

Each of these three Releases were acknowledged by the Receiver for the plaintiff on 16th day of August, 1958.

notice from the defendant to the plaintiff that it would regard its obligation on the bond as having been discharged if those settlements were consummated and the plaintiff's New York action [9] thereupon should be dismissed; (7) that the Circuit Court at Sioux Falls, South Dakota, on August 14, 1958, entered the following order, formal parts being omitted:

"The Petition of D. E. Mitchell, Receiver herein, presenting offers of settlement of all claims of the Receiver and Central Standard Insurance Company against Virgil D. Dardi, United Dye and Chemical Corporation, Atlantic Bank of New York, and Hyman D. Lehrich was heard by the court at 2:00 o'clock P.M. July 15, 1958 pursuant to Order and *Notice of Hearing* heretofore entered. The said D. E. Mitchell appeared by his Special Deputy, C. D. Gregg, and by his attorney, F. M. Smith. Creditors Louis Nelson and Virginia Nelson appeared by their attorney, Gale Braithwaite. Creditor Laurence Lantaff appeared by his attorneys, John Walsh and James Gootz. Creditor Associate Discount Incorporated appeared by its attorney, William Clayton. There were no other official appearances. The court found that notice of said hearing had been given all creditors and stockholders of record of Defendant, Central Standard Insurance Company, in accordance with Order of the Court entered June 19, 1958.

"The written proposal containing the offers of settlement of the said Virgil D. Dardi, United Dye and Chemical Corporation, Atlantic Bank of New York and Hyman D. Lehrich and executed by their attorneys of record on June 20, 1958 was presented to the court and ordered filed. The court examined the said proposal of settlement and heard the

parties appearing in connection therewith and thereupon adjourned said hearing until such time as the said D. E. Mitchell could be personally present and heard.

"Said hearing was reconvened at 3:00 o'clock P.M. on August 1, 1958 pursuant to written notice to the attorneys of record of all parties whose appearances have hereinabove been noted and at said time Receiver, D. E. Mitchell, was personally present and heard by the court on his Petition.

"The court then finding that acceptance of said offers of settlement is in the best interests of Defendant, Central Standard Insurance Company, and its creditors and stockholders, taking into consideration the questions of law and fact involved in the litigation heretofore instituted by the Receiver to pursue his claims against said parties, the expenses and hazards of such litigation, the financial responsibility of each of said parties as it has been represented to the court and all other factors involved, it is, on all the files and records herein, good cause appearing.

"Ordered that the offers of settlement of the said Virgil D. Dardi, United Dye and Chemical Corporation, Atlantic Bank of New York and Hyman D. Lehrich in the amounts hereinafter set forth be and the same hereby are accepted in accordance with the terms and conditions contained in the said proposal of settlement dated June 20, 1958:

| | |
|---|---|
| Virgil D. Dardi | $ 8,500.00 |
| United Dye and Chemical Corporation | $50,000.00 |
| Atlantic Bank of New York | $25,000.00 |
| Hyman D. Lehrich | $ 8,500.00 |

9. That action had been commenced by the plaintiff in the Supreme Court of New York against Dardi, the other releasees, and others, to recover losses suffered by the plaintiff as a result of alleged dishonest and fraudulent acts of its "employees", Dardi, Oliver and Wendell.

"and it is

"Further Ordered that the said D. E. Mitchell, as Receiver of Defendant, Central Standard Insurance Company, be and he hereby is authorized and directed to forthwith, execute and deliver to each of the parties above named a general release in the form annexed as Exhibit 'A' to the said proposal of settlement dated June 20, 1958 and to thereafter receive and deposit the said settlement sums as general assets in the Receivership estate and to do all other and further things that shall be required to conclude said settlements, and it is

"Further Ordered that upon consummation of said settlement the Receiver be and he hereby is authorized and directed to dismiss with prejudice but without costs as to the said Virgil D. Dardi, United Dye and Chemical Corporation, Atlantic Bank of New York and Hyman D. Lehrich, in action pending in the Supreme Court of the State of New York, County of New York, entitled 'Don Mitchell, as Receiver of Central Standard Insurance Company v. Stewart B. Hopps, et al.' and bearing index number 8777/1956." [10]

(8) that the receiver pursuant to the terms of that order signed said releases at Sioux Falls and that he thereafter received and deposited the settlement sums as general assets in the receivership account; (9) that the offers for those settlements came as a result of Central's claim in the New York action that each of the offerors had a part in its total alleged loss; (10) that this defendant was not made a party defendant in the New York action; (11) that it at the time had authority to do business in that state and had a resident agent therein upon whom process could have been served; (12) that Dardi was a principal on said bond, the other releasees were not; (13) that Cliver and Wendell also were principals; (14) that United Dye & Chemical Corporation and the Atlantic Bank of New York are solvent, but Cliver and Wendell are not, and (15) that the parties hereto by written stipulation have agreed:

"That the application for the insurance policy or contract of insurance was made by Central Standard Insurance Company in Sioux Falls, South Dakota; that the premium for said policy of insurance was paid by checks issued by the said Central Standard Insurance Company in Sioux Falls, South Dakota drawn upon a Sioux Falls, South Dakota bank; that the said policy was delivered to said Central Standard Insurance Company in Sioux Falls, South Dakota and accepted by said Central Standard Insurance Company in that city; that said policy was retained during all times material herein by said Central Standard Insurance Company in Sioux Falls, South Dakota until possession of said policy was taken by the Receiver, who has retained possession of the same in the State of South Dakota." [11]

Included in Central's alleged total loss is one item for $909,381.12, involving General American Insurance Company, a Texas corporation, Inland Empire Insurance Company, a Utah corporation, Guardian Insurance Company, a South Dakota corporation and United Benefit Fire Insurance Company, a Nebraska corporation, two disbursements, without

---

10. The Dardi stipulation for dismissal of the New York action as against him is in the following form, formal parts being omitted:

"It Is Hereby Stipulated and Agreed by and between the undersigned, the above-entitled action having been settled with respect to defendant Virgil D. Dardi, that the same be and it hereby is dismissed as against said defendant with prejudice but without costs to plaintiff or to said defendant as against the other, and that an order to this effect may be entered without further notice."
The other three as to form are identical.

11. Stipulation dated October 18, 1960.

consideration to Central, one for $200,000 to Limestreet Corporation, a Delaware corporation, and another for $1,818,000 to Royal American Insurance Company, an Alabama corporation, also an appropriation out of Central's assets on deposit with the Atlantic Bank of New York of $250,000 to pay a United Dye & Chemical Corporation's obligation to that bank in that amount.

Other material factual aspects are settled by a stipulation entered into on October 28, 1960. It, aside from formal parts being as follows:

"First, that there is attached hereto as Exhibit 'A' and by this reference made a part hereof a true and correct photo copy of letter dated June 20, 1958 addressed to Messrs. Milbank, Tweed, Hope & Hadley, 15 Broad Street, New York 5, New York by attorneys representing United Dye & Chemical Corporation, Atlantic Bank of New York, Hyman D. Lehrich and Virgil D. Dardi.

"Second, that said letter was prepared, executed and delivered in the State of New York and thereafter transmitted by mail to South Dakota and contains the offer of settlement pursuant to which the Releases now in evidence herein were executed.

"Third, that Exhibit 'A' attached hereto is hereby offered in evidence and may be received by the Court in this action.",

and said Exhibit "A":

"June 20, 1958
"Re: Don Mitchell, as Receiver of
      Central Standard Insurance
      Company, v. Stewart B.
      Hopps, et al.
"Messrs. Milbank, Tweed, Hope &
      Hadley
"15 Broad Street
"New York 5, New York
"Dear Sirs:

"You are the attorneys for plaintiff in the above entitled action, bearing Index No. 8777/1956 pending undetermined in the Supreme Court of the State of New York, County of New York.

"Each of the undersigned attorneys in behalf of the defendant indicated below represented by him or them (hereinafter referred to as 'said settling defendants'), submits an offer (hereinafter collectively referred to as 'said offers') to pay the sum set forth opposite the name of said settling defendant in Schedule A hereto annexed in settlement of all claims that plaintiff and/or Central Standard Insurance Company (hereinafter referred to as 'Central') may have against said settling defendants including, without limiting the generality of the foregoing, all claims asserted against each of said settling defendants in the second amended complaint in said action, upon the following terms and conditions:

"1. You hereby agree to submit promptly said offers for approval to the Circuit Court of the Second Judicial Circuit of the State of South Dakota, County of Minnehaha (hereinafter referred to as 'the receivership court'), which you represent has jurisdiction of the receivership of Central.

"2. Each of said settling defendants is delivering to you a certified or cashier's bank check or official bank check, which checks in the aggregate total $92,000, payable to the order of Don Mitchell, as Receiver of Central, concurrently upon your execution of this letter, which checks you agree to hold in escrow on the terms and conditions hereinafter provided.

"3. It is agreed that if, for any reason whatever, (a) the receivership court does not approve said offers by an order entered within forty-five (45) days after July 15, 1958, or (b) the receivership court approves said offers, by order and the documents, referred to in paragraph 4 hereinafter, are not delivered as provided in said paragraph

4 within twenty (20) days after such order of approval, you will, within 72 hours after the expiration of said forty-five (45) day period or said twenty (20) days period, whichever period is applicable, return to each settling defendant the check previously given to you by him or it, delivery to be made to his or its attorneys designated below, and said offers will be deemed withdrawn.

"4. If the receivership court approves said offers by an order, you agree to deliver to each of the undersigned, within twenty (20) days after the date of such order of approval, the following documents: (a) a certified copy of the receivership court's order approving said offers, (b) a general release executed by Don Mitchell, as Receiver of Central, in favor of the settling defendants in the form annexed hereto as Exhibit A, and (c) a stipulation signed by you dismissing said action with prejudice but without costs against said settling defendants. Upon the delivery of the documents hereinabove referred to in this paragraph 4, you may release the checks from escrow and deliver same to said Don Mitchell, as Receiver of Central.

"5. It is understood that said offers herein made are without prejudice, and will not be referred to by any party in this or any other proceeding or action, if said checks are returned and said offer is withdrawn as is provided in paragraph 3 hereof.

"6. It is further understood that said offers shall not be deemed or construed to be a concession by said settling defendants, or any of them, that he or it is liable for any of the acts alleged to be wrongful in the second amended complaint in said action, or that said settling defendants, or any of them, participated in or committed any of said acts.

"7. If the proposal outlined in this letter is satisfactory to you, please sign and return the enclosed copy." (This proposal is signed by the attorneys for the "said settling defendants" and New York counsel for Central).

"Schedule A.

"United Dye & Chemical
Corporation ...........$50,000
"Atlantic Bank of New
York ................. 25,000
"Hyman D. Lehrich ...... 8,500
"Virgil D. Dardi ......... 8,500"

Another stipulation entered into on October 18, 1960, which also has material bearing on questions raised, aside from formal parts, is as follows:

"It is hereby Stipulated and Agreed by and between the above named plaintiff and the above named defendant, through the undersigned, being their attorneys of record, as follows:

"First, that the Releases, Exhibits 'A', 'B', and 'C', were executed by the Receiver in the State of South Dakota; that the consideration referred to in said Releases was paid by Releasees in the State of New York to a designated agent of Receiver located therein and by said agent delivered to the Receiver in the State of South Dakota.

"Second, that the application for the insurance policy or contract of insurance was made by Central Standard Insurance Company in Sioux Falls, South Dakota; that the premium for said policy of insurance was paid by checks issued by the said Central Standard Insurance Company in Sioux Falls, South Dakota drawn upon a Sioux Falls, South Dakota bank; that the said policy was delivered to said Central Standard Insurance Company in Sioux Falls, South Dakota and accepted by said Central Standard Insurance Company in that city; that said policy was retained during all

times material herein by said Central Standard Insurance Company in Sioux Falls, South Dakota until possession of said policy was taken by the Receiver, who has retained possession of the same in the State of South Dakota."

There is agreement between the parties, under this record, that the bond agreement was made and entered into at Sioux Falls, on Central's office and base of operations being in that place and on the agreement itself containing no indication as to place of performance. The agreement, therefore, must be construed according to SDC 1939, Sec. 10.0106, which provides:

"A contract is to be interpreted according to the law and usage of the place where it is to be performed, or, if it does not indicate a place of performance, according to the law and usage of the place where it is made."

See also McConnell v. Spicker, 15 S.D. 98, 87 N.W. 574; First Nat. Bank of Sibley, Iowa v. Doeden, 21 S.D. 400, 403, 113 N.W. 81; Restatement—Conflict of Laws, Sec. 332; Scudder v. Union Nat. Bank, 91 U.S. 406, 412, 413, 23 L.Ed. 245; Pritchard v. Norton, 106 U.S. 124, 1 S.Ct. 102, 27 L.Ed. 104, and Wastun v. Lincoln Nat. Life Ins. Co., 8 Cir., 12 F.2d 422.

A bond agreement, where as in this case, the indemnitor "undertakes and agrees to indemnify and hold" an indemnitee "harmless * * * from and against any losses" sustained through "any dishonest or fraudulent act of any of the employees, committed anywhere", *"is a form of insurance rather than suretyship,* as the terms are ordinarily used." Lundeen v. Schumacher, 52 S.D. 149, 216 N.W. 883, at page 884, and in Federal Deposit Ins. Corp. of Washington, D. C. v. Western Surety Co., 66 S.D. 503, 285 N.W. 909,

at page 911: "Contracts guaranteeing the fidelity of persons holding positions of trust", it is said, *"are contracts of insurance and the principles of the law of insurance must rule the issues presented * * *"* (emphasis supplied.) These are expressions of the law in this state. See also Smith v. Federal Surety Co., 60 S.D. 100, 243 N.W. 664 and Farmers' & Merchants' State Bank of Verdon v. United States Fidelity & Guaranty Co., 28 S.D. 315, 133 N.W. 247, 36 L.R.A.,N.S., 452; Moore v. Capital Nat. Bank of Lansing, 274 Mich. 56, 264 N.W. 288, at page 289, and further authority on the point of insurance rules being of import rather than those relating to surety relationships [12] and on the former being controlling, and not the latter, in cases involving fidelity contracts, is found in the cases collected in 21A Words and Phrases, Insurance, page 611, in Jordan v. Group Health Ass'n, 71 App.D.C. 38, 107 F.2d 239, at page 244, and in the text statement in 42 C.J.S. Indemnity § 3, p. 566, where the author states:

"Insurance. While the basic concepts are not identical and each has varied legal usages, indemnity and insurance have common elements. Fundamentally each involves contractual security against anticipated loss, and in each case there must be a risk of loss to which one party may be subjected by contingent or future events, and an assumption of it by legally binding arrangement by another. Thus it has been said that a contract of indemnity is one of insurance, under which the indemnitor undertakes to save the indemnitee against loss arising from an unknown or contingent event. * *

"Suretyship. Contracts of indemnity are distinguished from those of suretyship in that in indemnity contracts the engagement is to make

12. Both parties in their briefs and argument first submitted, contended that the bond agreements gave rise to a surety relationship, and that the rules and statutes relating to such a relationship, should be applied, but their stipulation on October 18, 1960, refers to the agreement as an "insurance policy" or a "contract of insurance."

good and save another from loss on some obligation which he has incurred or is about to incur to a third person, and is not as in suretyship a promise to one to whom another is answerable. A surety is directly and immediately liable for a debt; and indemnitor is liable only after unsuccessful efforts by the indemnitee to collect from the debtor. A contract of surety involves a direct promise to perform the obligation of the principal in the event that the principal fails to perform as required by his contract; a contract of indemnity obligates the indemnitor to reimburse his indemnitee for loss suffered or to save him harmless from liability, but never directly to perform the obligation indemnified. A contract of suretyship requires three parties, the principal, the obligor, and the surety, while one of indemnity requires two parties, the indemnitor and the indemnitee."

Tested by those standards, it is clear that the bond agreement under consideration is an indemnity or insurance contract, that it is to be construed according to rules pertaining to such contracts and that rules and statutes relating to surety relationships are not to be applied.

Such a conclusion is not in conflict with the pronouncement in Madison County Farmers Ass'n v. American Employers' Ins. Co., 8 Cir., 209 F.2d 581, 42 A.L.R.2d 1153 rather, in strict accord, since the court, under the facts in that case, merely gave effect to the rule, as does the court in this one, that the law of the state where the contract is made and performed, is controlling.

■ Implicit, in such insurance contracts, are rights of subrogation, whether expressly provided for or not. Parker v. Hardy, 73 S.D. 247, 41 N.W.2d 555; Aetna Casualty & Surety Co. v. Phoenix Nat. Bank & Trust Co., 285 U.S. 209, 52 S.Ct. 329, 76 L.Ed. 709; Borserine v. Maryland Casualty Co., 8 Cir., 112 F.2d 409; Harter v. American Eagle

Fire Ins. Co., 6 Cir., 60 F.2d 245, and Weber v. United Hardware & Implement Mutuals Co., 75 N.D. 581, 31 N.W.2d 456.

As said in Parker [73 S.D. 247, 41 N.W.2d 556]:

"It is a well settled rule of law that an insurer is entitled to subrogation, either by contract or in equity for the amount of the indemnity paid. Harrington v. Central States F. Ins. Co., 169 Okl. 278 [255], 36 P.2d 738, 96 A.L.R. 859; Flor v. Buck, 189 Minn. 131, 248 N.W. 743; Shiman Bros. & Co. v. Nebraska Nat. Hotel Co., 143 Neb. 404, 9 N.W. 2d 807.",

in Aetna [285 U.S. 209, 52 S.Ct. 331]:

"Petitioner's undertaking "to indemnify * * * and hold harmless" the respondent from any loss sustained by reason of the specified payments, contained no words indicating an intention to destroy the indemnitor's usual privilege of subrogation to the indemnitee's right to recover from any who are liable to it for the loss. That privilege *was a necessary incident to petitioner's contract,* for only by resort to it could the character of the contract as indemnity be preserved * * * See Standard Marine Ins. Co., Ltd., v. Scottish Metropolitan Assurance Co., Ltd. 283 U.S. 284 [51 S.Ct. 371, 75 L.Ed. 1037]; United States v. American Tobacco Co., 166 U.S. 468 [17 S.Ct. 619, 41 L.Ed. 1081]; St. Louis, Iron Mountain & Southern Ry. Co. v. Commercial Union Ins. Co., 139 U.S. 223, 235 [11 S.Ct. 554, 35 L.Ed. 154]; Hall & Long v. Nashville & C. R. Co., 13 Wall. 367 [20 L.Ed. 594]; Jones v. Bacon, 145 N.Y. 446, 450; 40 N.E. 216." (Emphasis supplied.)

in Borserine [112 F.2d 414]:

"An insurer, upon paying a loss, is subrogated to the insured's right of action against any other person responsible for the loss. The right of the insurer against such other

person arises out of the nature of the contract of insurance as a contract of indemnity, is derived from the insured, and at common law was to be enforced in his name. Subrogation is a normal incident of indemnity insurance.",

in Harter [60 F.2d 246]:

"The defendant possessed the right to subrogation to the extent of its liability on the policy not only under its contract, but upon equitable principles. Phoenix Insurance Company v. Erie & W. Transportation Company, 117 U.S. 312, 6 S.Ct. 750, 29 L.Ed. 873; Farmers' Bank v. Hayes, 6 Cir., 58 F.(2d) 34.",

and in Weber [75 S.D. 581, 31 N.W. 2d 459]:

"Subrogation as used in this connection is a substitution by which the insurer who has paid a loss under a policy succeeds to any rights the insured may have against any person who may be primarily responsible for the loss. This rule has its origin in the general principles of equity and the nature of the insurance contract. 8 Couch Cyclopedia of Insurance Law 6587; 6 Appleman, Insurance Law and Practice § 4051; Vance on Insurance 668; May on Insurance, Second Edition 683; 26 C.J. 455; 46 C.J.S., Insurance, § 1211; Pittsburgh, C., C. & St. L. Ry. Co. v. Home Ins. Co. of New York, 183 Ind. 355, 108 N.E. 525, Ann.Cas.1918A, 828.

"This principle applies even if there is no provision for it in the insurance contract. It is purely a matter of equity. The purpose is to make him pay who is primarily responsible for a loss and in good conscience should bear the consequences thereof. Under this rule the insurer has the right to recover from the one primarily liable for the damage to recoup himself to the amount he has paid the insured under the insurance policy.

"This is a right that will be liberally applied for the protection of those who are its beneficiaries but will not be allowed where it would work injury to the party against whom it is claimed or deprive him of legal or equitable rights. 8 Couch Cyclopedia of Insurance Law 6589; 6 Appleman, Insurance Law and Practice, § 4051."

again in Gerlach v. Grain Shippers Mut. Fire Ins. Ass'n, 156 Iowa 333, 136 N.W. 691, 692:

"Had the property been consumed by a fire set out by the railroad company, its liability would have been primary, and the liability of the insurance company in the nature of that of a surety. Upon payment of indemnity by the latter, it would be entitled to all the remedies of the insured. This 'right is based upon the equitable doctrine that where one has been obligated to pay money to another, by the nonfeasance or misfeasance of a third, who, being at fault, ought to bear the loss, the party so paying, as by his direct obligation towards the party suffering the loss he may be compelled to do, shall be allowed indirectly, and through the right which the injured party had, to compel the wrongdoer to bear the burden which was imposed by his fault, although between him and the wrongdoer there is no direct relation upon which to found a cause of action * * * The liability of the wrongdoer is, in legal effect, first and principal, and that of the insurer secondary, not in order of time, but in order of ultimate liability. And where the (party) insured insists upon his remedy against the party secondarily liable, he is conscientiously bound to make an assignment in equity to the person entitled to the benefit, and the acceptance of the indemnity from the insurers is in the nature of an equitable assignment which authorizes the assignor to sue in the name of the assignee for his own benefit.' May on Ins. § 454.

"Even in the absence of any provision such as contained in this policy, the insurer, upon the payment of loss, is entitled to be subrogated to the cause of action of the insured against the wrongdoer. Rockingham Mut. Fire Ins. Co. v. Bosher, 39 Me. 253, 63 Am.Dec. 618; Mobile & M. Ry. Co. v. Jurey, 111 U.S. 584, 4 Sup.Ct. 566, 28 L.Ed. 527; Hart v. Western R. R. Co., 13 Metc. (Mass.) 99, 46 Am.Dec. 719."

See also Bacich v. Homeland Ins. Co. of America, 212 Minn. 375, 3 N.W.2d 665, where it is held: "The right of 'subrogation' of an insurer after paying insured's loss does not depend upon contract, but on the operation of general principles of equity in the nature of a contract of insurance."

Those authorities are in answer to one of the plaintiff's major contentions, that the defendant's obligations to pay became absolute when the alleged loss took place and the implied inference that subrogation rights were not a part of the bond agreement.

The defendant's claims, then, under its "Second Defense", as amended, must be considered from the standpoint that the subrogation rights, impliedly a part of the fidelity insurance agreement, may have been violated as a result of the plaintiff's New York settlements and to such an extent as to discharge the defendant of all of its obligations under that agreement, implicit ones as well as those which were expressed.

■ As conclusion is sought on the merits of that defense, it is necessary to find from the record where the settlement agreements were made and performed and to invoke applicable provisions of SDC 1939, Section 10.1016, supra.

While there are contentions in the record to the effect that those settlements were performed in South Dakota and that construction rules, adopted in this state for that reason should control, it must be held otherwise, inasmuch as the stipulations entered into, October 18 and 28, 1960, are conclusive on the points that the plaintiff under the terms of the offers was required to accept in New York and that the settlors were required to perform in that state immediately after the acceptances had been completed. Those stipulations show that the receiver through his New York counsel did accept in that state as the specified releases and stipulations were delivered, that the settlement agreements came into existence at the moment of those acceptances and that the settlors performed in New York as the title 'to the settlement funds —in possession of said New York counsel—passed to Central as the settlement agreements were completed.

■ New York, where the settlement agreements were made, settled the question of the effect of releases given in the course of such transactions, as early as in the case of Connecticut Fire Ins. Co. v. Erie Ry. Co., 73 N.Y. 399, as the court held, that a release of the kind and substantially in the form of those given by the plaintiff, did not operate as a bar or a defense in a subsequent action by the insured against the insurer on the insurance contract. The release under consideration in that case was in the following form:

"Loss and damage.
"Erie Railway Company,
"To John Martin,
"Salisbury Mills, Dr.

"For settlement in full of all claims, demands and causes of action against the Erie Railway Company for loss and damage by fire, claimed to have been caused by sparks or coals from engine, burning hotel building, barn, shed and contents, fences, trees, etc., at Salisbury station, on or about May 13th, 1773, ...................... $2,100.

"This settlement is not intended to discharge the Connecticut Fire Insurance Company from any claim which said Martin has against them for insurance, but as a full settlement with, and discharge of, the Erie Railway Company only.

"Received, September 10, 1873, of the Erie Railway Company,

through the hands of R. L. Brundage, claim agent, two thousand one hundred dollars, in full of the above amount.

"2,100.          John Martin.",

and its effect was dealt with as the court made the following comment:

"It is insisted that as the assured has settled and released all his claim for damages, the plaintiff could acquire no right or remedy through him by equitable subrogation, or from him by assignment. This proposition implies an assumption of the controverted fact whether the assured did release all claim. The answer to it is that the assured released only such damages as he could without interfering with his claim against the plaintiff, and the legal consequences must be regarded as a part of the exception, viz., the right of the plaintiff to a remedy over. This was as much reserved as the right to enforce the policy. That right could not be reserved without reserving the remedy. The power to enforce the policy having been expressly reserved, the parties could not take away the right of the plaintiff to the remedy which that reservation vested in him by law. Having made their agreement so as to prevent the plaintiff from interposing this defense, they cannot object to the consequences which legally flow from it. The exception necessarily embraces the right of subrogation. It is not needful to consider whether the effect would have been different if the assured had received the full amount of the loss. No injustice is done the defendant by the result indicated. It was liable for the whole loss, and the payment to the plaintiff of the amount of the policy will, with that already paid, not exceed that amount. It did not profess to pay the assured but a part of that amount, nor did the assured intend to receive but a part, and the legal construction of the contract accords with the principles of right and justice."

Even more expressive of the scope and extent of the New York rule is its "Debtor and Creditor Law", McKinney's Consol.Laws, c. 12, the enactment clause, that it is "An Act to amend the debtor and creditor law, in relation to discharge of joint obligors", and Sections 233 and 234 thereof, which provide:

"Consideration to be credited to co-obligor. The amount of value of any consideration received by the obligee from one or more of * * * joint, or of joint and several obligors, in whole or in partial satisfaction of their obligations, shall be credited to the extent of the amount received on the obligations of all co-obligors to whom the obligor or obligors giving the consideration did not stand in the relation of a surety."

"Discharge of one obligor, with reservations. Subject to the provisions of section two hundred and thirty-three, the obligee's release or discharge of one or more of several obligors, or of one or more of joint or of joint and several obligors shall not discharge co-obligors, against whom the obligee in writing and as part of the same transaction as the release or discharge, expressly reserves his rights, and in the absence of such a reservation of rights shall discharge co-obligors only to the extent provided in section two hundred and thirty-five."

The impact of that Act, its effect on joint or joint and several obligors and the extent to which it has been applied, are matters covered in Brill v. Brandt, 176 Misc. 580, 26 N.Y.S.2d 477, affirmed by the Court of Appeals of New York, 289 N.Y. 581, 43 N.E.2d 718, where the court held that the Act applied and that the rule in Spies v. National City Bank, 174 N.Y. 222, 66 N.E. 736, 61 L.R.A. 193, which was distinguished on the fact, didn't, in Meyn v. Schutte, 20 Misc.2d 471, 186 N.Y.S.2d 965, where the Court applied the rule to a surety relation, in

Fox v. Western New York Motor Lines, 232 App.Div. 308, 249 N.Y.S. 623, where the rule was extended to joint tort feasors, in Gaylor v. Burroughs, 248 App. Div. 915, 290 N.Y.S. 679, affirmed 273 N.Y. 606, 7 N.E.2d 716, where under the New York statute it was held the discharge released the co-obligors only to the extent of the settlement received by plaintiff, and Wilson v. City of New York, Sup., 131 N.Y.S.2d 47, where the court held that the Act applied to master and servant relationships, even as the Court held the releases and the defendant not technically joint tort feasors.

Reference is made to this Act in the annotation 124 A.L.R. 1298, at page 1309, where mention is made of Gaylor v. Burroughs, supra:

"Where plaintiff, seeking to recover damages for the wrongful conversion of shares of stock, had settled a prior action against certain obligors and had discharged and released them from all claims on account of said conversion, and then brought action against other co-obligors for the difference between the settlement and plaintiff's actual loss, it was held that, * * * under the New York statute, the discharge released the co-obligors only to the extent of the settlement received by plaintiff.",

and there is another, 148 A.L.R. 1270, at page 1279 where the statement is made:

"The rule is well settled that an injured person may receive but one satisfaction for his injury, whether the injury be done by one or more; that a release of one or more of the persons liable for the injury is a discharge of all unless the release contains an express reservation of rights against third persons, or otherwise indicates on its face that the satisfaction is intended to be partial only. This is the law in this state, * * *"

The stipulations for dismissal of the New York actions and the orders authorized thereof, contrary to the defendant's contention, had no effect beyond the agreements for settlement. They were but parts of the performance contemplated by those agreements, the means customarily employed in the practice to consummate settlements. They had the effect as did the releases of precluding further action by the plaintiffs against the settlors and they were not in view of the surrounding circumstances, intended as cancellations of rights expressly reserved. As noted in 83 C.J.S. Stipulations § 20, p. 42:

"Stipulations for the dismissal or discontinuance of a suit must be given a fair and reasonable construction, and interpreted in the light of the circumstances surrounding the parties and in view of the result which the parties were attempting to accomplish." Cf. Fields v. Berg, 333 Ill.App. 46, 76 N.E.2d 554; Nordred Realties v. Langley, 169 Misc. 659, 7 N.Y.S.2d 903, affirmed 279 N.Y. 636, 18 N.E.2d 38, certiorari denied 306 U.S. 655, 59 S.Ct. 644, 83 L.Ed. 1053, and

as said in Brill v. Brandt, supra, as the court in that case dealt with the satisfaction of a judgment given to a co-obligor and the effect of a general release of a non-judgment claim:

"The effect of the reservation of the bank's rights against other parties to the instrument was to preserve the right of subrogation of subsequent parties who might pay the instrument, a right which would have been destroyed in the absence of the reservation. Thus, in National Park Bank of New York v. Koehler, 204 N.Y. 174, at pages 179, 180, 97 N.E. 468, the Court of Appeals pointed out that the reservation of a creditor's rights against an endorser put the latter in a position to pay immediately and proceed against the principal debtor, despite an extension agreement entered into by the creditor with the principal debtor. So here, the effect of the reservation was to place plaintiffs in a position on paying the bank to proceed

against Brandt and Satenstein, notwithstanding the bank's having released them. Nor was plaintiff's right to be subrogated to the bank's rights against Brandt affected or impaired by the satisfaction of the judgment against Brandt after the bank had assigned it to his nominee. Brandt had, as part of the settlement with the bank, agreed, in effect, that the rights of plaintiffs would not be affected by his release or by the assignment or satisfaction of the judgment against him. Similarly, the bank's satisfaction of its judgment against Satenstein did not impair plaintiffs' right to enforce the judgment as subrogee thereof, since the satisfaction itself expressly reserved the bank's rights against all other parties to the indebtedness or obligation which had resulted in the judgment. The provisions of Section 234 of the Debtor and Creditor Law which authorize an obligee to discharge one of several obligors and reserve his rights against others would seem to be equally applicable where the obligee's rights have taken the form of a judgment as they are to a situation where the obligee has not yet obtained a judgment. The same principle should govern whether the obligee executes a general release of a non-judgment claim or executes a satisfaction of a claim reduced to judgment.

"The court accordingly holds that neither the releases nor the assignment of the judgment to Brandt nor the satisfaction of the judgments against Brandt and Satenstein discharged plaintiffs' liability to the bank. The payment made by plaintiffs to the bank was, therefore, a payment which they were obligated to make." [176 Misc. 580, 26 N.Y.S. 2d 481.]

What then was the effect of those settlements as construed under this state's conflict of laws, on the subrogation rights acquired by the defendant as it entered into the fidelity insurance contract. Statutes in this state relating to indemnity insurance furnish no answer, contrary to the situations which obtain in surety and guarantor cases, SDC 1939, Chapter 31.31. Guides to conclusions, however, are in the rules, that equity supplies and adds such rights to an insurance contract, Parker v. Hardy, supra, and cases there cited, in the protection they give and the limitations thereon, when it appears that such rights have not been prejudiced. The "right", as heretofore pointed out, "*will be liberally applied for the protection of those who are its beneficiaries, but will not be allowed where it would work injury to the party against whom it is claimed or deprive him of legal or equitable rights.* 8 Couch Cyclopedia of Insurance Law 6589; 6 Appleman, Insurance Law and Practice, § 4051", supra [75 N.D. 581, 31 N.W.2d 459], (emphasis supplied). As a general rule it seems that a mere violation of the risk does not *ipso facto* discharge the insurer, and that insurer in order to escape liability, must prove that the change made is material and prejudicial. American Surety Company of New York v. Greek Catholic Union, 284 U.S. 563, 52 S.Ct. 235, 76 L.Ed. 490. Changes to that extent are required before a breach of contract can be maintained. The situation in this respect is different from surety or guarantee relationships, SDC 1939, Sections 26.0116 and 26.0205.

Within such guidelines there are no material and prejudicial changes in the subrogation rights originally acquired by the defendant. It, now as well as before the settlements, can enforce those rights against the tort feasors or any of them. Those rights have not in any manner been changed. The change wrought by the plaintiff's release of its rights against Dardi, et al., is nullified, under the New York rule insofar as it related to the defendant's right to sue, hence neither material nor prejudicial. There is no proof that Dardi, et al., are not residents and citizens of New York, on the contrary, that they are. Therefore, there is no permissible inference, even, that the defendant might have to enforce its subrogation rights in a state or states where the conflict of laws rule as to the construction of the settlement agree-

ments, differs from this state's. Such a contingency, in any event, was one of the inherent risks, it assumed, when it furnished the indemnity insurance. An overall scrutinization of this aspect of the case, compels the conclusion that the defendant's subrogation rights have not been materially and prejudicially changed.

Not overlooked, are the contentions that the receiver's act in accepting the settlement funds at Sioux Falls was the the last one in the settlement transaction and that the agreements therefore are South Dakota contracts. On that point suffice it to say, that the transfer of those funds to the receiver in this state was neither a condition nor a requirement under the offers which the receiver had been authorized to accept and which he did accept. Moreover, it was but a transaction between one of the contracting parties and its attorneys. It did not involve the others.

Other facts, likewise considered, but also regarded as not material are the defendant's refusal to consent to the settlements, its tender of defense and notice that if the settlements were made it would take the position it is taking in this case, all necessarily having been included in the conclusions as to materiality and prejudice.

Accordingly, it is held that all issues raised by the Second Defense contained in defendant's supplemental answer dated October 14, 1958, the plaintiff's reply thereto dated June 29, 1959, the defendant's supplemental answer dated March 1, 1960, and the plaintiff's reply thereto dated March 17, 1960, be, and they are hereby determined in favor of the plaintiff and against the defendant, and the defendant's motion for summary judgment is hereby denied.

This decision shall be regarded as the findings of fact and conclusions of law as to all matters before the court under the stipulation for separate trial.

Counsel for the plaintiff will prepare form judgment in harmony with this decision and forward the same to the court for approval.